**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allstate Life Insurance Company, | Lead Case No. CV-09-8162-PCT-GMS |
| Plaintiff, | Consolidated with: Case No. CV-09-8174-PCT-GMS |
| vs. | **ORDER** |
| Robert W. Baird & Co. Inc., *et. al.*, | |
| Defendants. | |
| Ronald Covin, *et al.*, | |
| Plaintiffs, | |
| vs. | |
| Robert W. Baird & Co., Inc., *et al.*, | |
| Defendants. | |

Pending before the Court is the Motion for Judgment on the Pleadings filed by Wells Fargo Bank, N.A. ("Wells Fargo"), who is a Third-Party Defendant in this action. (Dkt. # 140.) As set forth below, the Court grants the Motion in part and denies it in part.[1]

**BACKGROUND**

In 2005, the Town of Prescott Valley, Arizona (the "Town") entered into an agreement with Prescott Valley Event Center, LLC ("PVEC") to develop and construct a

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

multipurpose event center (the "Event Center") in Prescott Valley. Pursuant to this Development Agreement, the Town agreed to use certain tax revenues ("Transaction Privilege Revenues" or "TPT Revenues") for payments to investors who provided financing for the Event Center. (Dkt. # 95 at 25 ¶ 2.) Specifically, the Town agreed to deliver payments out of these Revenues to PVEC, which was then required to use the money to pay down debt service obligations owing to the Event Center's financiers. (*Id.* at ¶ 28.) In the latter part of 2005, however, PVEC assigned its right to receive payments from the Town to Wells Fargo, which had been appointed as indenture trustee for $35 million in Bonds that were issued to finance the Event Center. According to the Town, this assignment required Wells Fargo to step into the shoes of PVEC and to use the Town's payments " to pay the debt service owing to Bondholders." (*Id.* at ¶ 28.) The Town further alleges that a November 2005 Indenture of Trust Agreement (the "Indenture"), which sets forth Wells Fargo's obligations to Bondholders, contains similar provisions requiring Wells Fargo to use the TPT Revenues to pay principal and interest on the Bonds. (*Id.* at ¶ 29.)

In September 2007, approximately one year after completion of the Event Center, Wells Fargo began requesting TPT Revenue to make debt service payments due to Bondholders. (*Id.* at ¶ 19.) After the Town made the first payment, Wells Fargo distributed the funds to the Bondholders. Similar transactions occurred in October 2008 and April 2009. Then, in September 2009, Wells Fargo sent an invoice to the Town requesting payment of $1,159,179.76 to make an October 2009 debt service payment to the Bondholders. But, while the Town promptly transferred a portion of its TPT Revenue to Wells Fargo, the latter never disbursed any of the money to Bondholders, though the Town alleges that Wells Fargo was required to do so under the Development Agreement and the Indenture. Instead, the majority Bondholder, Allstate Life Insurance Company ("Allstate"), had directed Wells Fargo to forbear the disbursement based on the belief that the Town and those involved with obtaining financing for the Event Center had committed securities fraud in issuing the Bonds. (*Id.* at 24.) Thus, rather than disburse the $1,159,179.76 to Bondholders, Wells Fargo used it to "enable [Allstate's] counsel . . . to pursue legal action" on Allstate's behalf. (*Id.*)

After Wells Fargo withheld payment of the October Distribution from the Bondholders, Fitch Ratings ("Fitch") downgraded the Bonds from "B" to "D" and then withdrew its rating completely. According to the Town, the downgrade and the subsequent decline in the value of the Bonds was a direct result of Wells Fargo's decision to withhold the October 2009 Distribution. Wells Fargo, however, asserts that the decline in value was a result of misstatements and omissions made by those who issued the Bonds.

In September 2009, Allstate filed the instant lawsuit alleging that the Town, and those who helped the Town obtain financing for the Event Center, committed fraud and violated securities laws. Several Bondholders (the "Class Action Plaintiffs") then filed a class-action complaint alleging similar claims. After Allstate and the Class Action Plaintiffs (collectively "Plaintiffs") initiated this action, the Town filed Counterclaims against Plaintiffs and a Third-Party Claim against Wells Fargo. According to the Town, Wells Fargo withheld TPT payments from the Bondholders in violation of the Development Agreement and the Indenture. (Dkt. # 95 at 34.) In its Counterclaim, the Town seeks relief based on three theories: (1) statutory interpleader under 28 U.S.C. § 1335; (2) a third-party claim pursuant to Federal Rule of Civil Procedure 14(a); and (3) declaratory relief clarifying how the TPT Revenue should be disbursed. (*Id.* at 35–37.) Wells Fargo now moves to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(c).

**LEGAL STANDARD**

A motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is generally assessed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). The Court must construe the pleadings "in the light most favorable to the nonmoving party," *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005), and will only grant the motion "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

In ruling on a motion for judgment on the pleadings, a court cannot consider evidence outside the pleadings unless the motion is treated as one for summary judgment pursuant to Federal Rule Civil Procedure 56. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider documents that are attached to the relevant pleading as exhibits or are "referenced extensively" in the pleading and "accepted by all parties as authentic." *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).[2]

## DISCUSSION

### I. The Town Has Not Stated a Claim for Statutory Interpleader.

Federal courts may exercise interpleader jurisdiction when (1) a party possesses "money or property" of $500 or more or is "under any obligation . . . [in] the amount of $500" or more and (2) "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property" or to "the benefits arising" from that obligation. 28 U.S.C. § 1335(a); *see Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 507 (9th Cir. 1978) ("[A] basic jurisdictional requirement of a statutory interpleader action is that there be 'adverse claimants' to a particular fund") (citation and footnote omitted); *Indianapolis Colts v. Baltimore*, 741 F.2d 954, 956 (7th Cir. 1984) (rejecting interpleader where there were no adverse claims). Even where "the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another,"

---

[2]The Town and Wells Fargo request consideration of documents pertaining to the transactions between the Town, PVEC, and Wells Fargo. Specifically, the Town requests consideration of the Development Agreement and the Indenture (Dkt. # 152), while Wells Fargo requests consideration of the Assignment Agreement between Wells Fargo and PVEC (Dkt. # 140). In resolving the instant matter, the Court may consider the "contents of the [the Town's Counterclaim]" and "evidence on which the [Counterclaim] 'necessarily relies' if: (1) the [Counterclaim] refers to the document; (2) the document is central to the [Counterclaim]; and (3) no party questions the authenticity of the copy attached." *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). This standard is met with respect to the Development Agreement and the Indenture. The Assignment Agreement, however, is not central to the Town's claims. Thus, in issuing this Order, the Court considers the Development Agreement and the Indenture, but not the Assignment Agreement. *See Van Buskirk*, 284 F.3d at 980 (noting that a documents outside of the pleadings may be considered, but only if they are "referenced extensively" in the pleadings).

- 4 -

interpleader jurisdiction is properly invoked so long as the claims pertain to the same fund or stake. 28 U.S.C. § 1335(b); *see Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 199 (1934) (noting that the statute covers adverse claims "no matter on what grounds urged," so long as those claims concern a common stake). Where "only one party ma[kes] a claim against the fund[,]" however, there can be no interpleader. *See Libby*, 592 F.2d at 508.

The requirements for statutory interpleader are not satisfied in this case because there are no adverse claimants to a common fund. To the extent that the TPT Revenue even constitutes a common fund, only one entity, Wells Fargo, has asserted an interest in that Revenue. According to the Town, both Wells Fargo and the Bondholders assert or may assert a claim to the TPT Revenue. In their Answers to the Town's Counterclaim, however, both sets of Plaintiffs deny any claim "to amounts paid, now available to be paid, or required to be paid in the future under the . . . Development Agreement." (Dkt. ## 129 at ¶ 1; 131 at ¶ 1.) Plaintiffs, therefore, have apparently disclaimed any claim adverse to Wells Fargo in the TPT Revenue. Because Plaintiffs have disavowed any present interest in the TPT Revenue, leaving Wells Fargo as the only entity claiming a right to the fund, the Town's claim for interpleader necessarily fails.

Moreover, courts have frequently rejected interpleader claims similar to the Town's claim in the case at bar. For instance, in *Libby*, 592 F.2d at 508, the Ninth Circuit found interpleader jurisdiction lacking where all but one of the potential claimants explicitly disavowed any claim to the common fund. *Id.* The court so held, even though several of the claimants asserted causes of action against Libby. *Id.* In dismissing the interpleader action, the Ninth Circuit distinguished earlier cases that allowed interpleader to go forward where a claimant had disavowed an interest to a common fund. *Id.* (distinguishing *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1307 (8th Cir. 1977) and *Royal School Laboratories, Inc. v. Town of Waterton*, 358 F.2d 813, 815 (2d Cir. 1966)). These courts allowed interpleader claims to proceed because, while the claimants disavowed any interest in the common fund, those claimants asserted separate claims that were "inextricably interrelated" to the common fund. *Dakota Livestock*, 552 F.2d 1302, 1307; *Royal School Laboratories*, 358 F.2d at 815.

- 5 -

In *Libby*, on the other hand, the Ninth Circuit refused to exercise interpleader jurisdiction because the parties raised claims that were "entirely separate and distinct from the transactions that had produced the deposited fund." *See Libby* 592 F.2d at 509 (quoting *Dakota Livestock*, 552 F.2d at 1308;) *see also Gaines v. Sunray Oil, Co.*, 539 F.2d 1136, 1142 (8th Cir. 1976) (dismissing interpleader claim for lack of adverse claimants where the claimants raised separate claims that were independent of any common fund).

As in *Libby*, Plaintiffs in this case assert an independent theory of liability against the Town that is unrelated to any common fund. *See* 592 F.2d at 508. Here, Plaintiffs allege securities fraud and seek damages from the Town's general fund based on the Town's alleged omissions and misstatements related to Bonds issued to finance the Event Center. Rather than seek relief based on the non-payment of TPT Revenues, Plaintiffs' claim is premised on the allegedly inflated value of the Bonds at the time of purchase. Accordingly, Plaintiffs' claim against the Town arises from a "transaction[] entirely separate and distinct from the transactions" related to the TPT Revenues. *See Libby*, 592 F.2d at 508 (quoting *Dakota Livestock*, 552 F.2d at 1308). Thus, because Plaintiffs' claim is not "inextricably interrelated" with a common fund, the Town's claim for interpleader fails as a matter of law. *See Royal School Laboratories*, 358 F.2d at 815.

The Town alleges that interpleader is necessary to protect it from double liability for the value of the TPT Revenue. Nevertheless, to the extent that the Bondholders have or may have a claim to the TPT Revenue paid to Wells Fargo, that claim would appear to lie against Wells Fargo rather than the Town. To be sure, the Town may be correct that Wells Fargo has misappropriated the TPT Revenue by using it to fund the instant litigation. But this alone is not a basis for interpleader when the alleged claimant specifically disavows an interest to the common fund and when the party seeking interpleader fails to identify a legal basis upon which the claimant might assert a right to that fund. Nonetheless, as discussed below, to the extent that the Town was damaged by Wells Fargo's alleged breach of the Development Agreement and the Indenture, the Town may pursue relief through its third-party and declaratory judgment claims.

**II.    The Town Has Stated a Third Party Claim.**

Federal Rule of Civil Procedure 14(a) permits "[a] defending party . . . , as a third-party plaintiff," to assert claims against "a nonparty who is or may be liable to it for all or part of the claim against" the third-party plaintiff. *See* Fed. R. Civ. P. 14(a). In other words, if the facts are such that the third-party defendant may be liable for all or part of the third party plaintiff's liability to the original plaintiff, the third party complaint should be allowed to stand. *See Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*, 873 F.2d 1327, 1330 (9th Cir. 1989).

In its Counterclaim, the Town alleges that Wells Fargo's failure to pay monies from the TPT Revenue to Bondholders, as allegedly required in the Development Agreement, may increase the Town's liability to the Bondholders. If so, Wells Fargo could be liable to the Town for a commensurate increase in its liability. According to the Counterclaim, Wells Fargo's decision to stop making disbursements to the Bondholders caused Fitch to downgrade its rating for the Bonds from "B" to "D" and to later withdraw its rating altogether. (Dkt. # 95 at 29 ¶26.) At this stage of the litigation, the Court cannot conclude as a matter of law that the subsequent drop in the Bonds' value, for which the Bondholders allege that the Town is liable, could not be at least partially the result of this downgrade. Accordingly, because the Bondholders allege that the Town is liable for the full amount of their investment, and because the Town contends that at least part of its alleged liability is a consequence of Wells Fargo's alleged non-compliance with the Development Agreement, it is plausible that Wells Fargo could be found liable for some portion of the Bondholders' claims against the Town. The Court, therefore, finds that the Town has adequately alleged a third-party claim against Wells Fargo.

Wells Fargo's argument that the Town is without standing to invoke a third-party claim is without merit. According to the Town, the Development Agreement prevents Wells Fargo from using the Town's money to litigate this action. (*See* Dkt. # 152, Ex. A at ¶¶ 4.3.74, 4.3.76; *see also* Dkt. # 95 at 31 ¶ 28). Assuming this is correct, the Town, as a party to the Development Agreement, has standing to enforce that provision of the Agreement

against Wells Fargo. And, while Wells Fargo contends that the Town lacks standing to enforce the Indenture because the Town is not a party to that Agreement, the Town's Counterclaim avers that the Indenture, which apparently requires Wells Fargo to use the money disbursed by the Town to pay Bondholders, was "designed to implement the Trustee's obligation to handle and disburse [the] amounts received from the Town (and from other sources) strictly as required by the Development Agreement." (*See* Dkt. # 95 at 31¶ 29.)

To the extent that Wells Fargo contends that it was authorized as a matter of law to use the Town's money to fund the instant litigation, there may be questions of fact that preclude judgment on a motion to dismiss. According to Wells Fargo, the Assignment Agreement between PVEC, the original trustee, and Wells Fargo relieves the latter from any obligation, duty, or liability under the Development Agreement—including any obligation to use the Town's money to pay debt service on the Bonds. The Town, on the other hand, contends that this provision only relieves Wells Fargo from PVEC's duties pertaining to the construction and management of the Event Center—not of the obligation to use the Town's money to pay Bondholders. At this point in the proceedings, however, the Court need not determine whether the Assignment Agreement absolves Wells Fargo of the requirement that the Town's money be used exclusively for the payment of debt service. As a procedural matter, the Assignment Agreement is not properly before the Court for purposes of the Motion for Judgment on the Pleadings. *See supra* n. 2. Furthermore, viewing the facts in the light most reasonable to the Town, it is at least plausible that Wells Fargo is subject to the Development Agreement's provision that allegedly precludes Wells Fargo from using the Town's funds to finance this litigation.

**III.  The Town Has Stated a Claim for Declaratory Judgment.**

According to the Ninth Circuit, there are "two criteria for determining whether declaratory relief is appropriate: '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (quoting *McGraw-Edison*

*Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966), *cert. denied,* 385 U.S. 919 (1966)).

Declaratory relief may serve a useful purpose in this action in clarifying whether the Development Agreement and Indenture prohibit Wells Fargo from using payments from the Town's TPT Revenue to finance Allstate's lawsuit against the Town. Declaratory relief may also be helpful in determining whether, and to what extent, Wells Fargo's alleged breach of the Development Agreement increased the potential liability to the Town for its alleged misconduct. The Town, therefore, has stated a claim for declaratory relief.

**IT IS THEREFORE ORDERED** that Wells Fargo's Motion for Judgment on the Pleadings (Dkt. # 140) is **GRANTED** in part and **DENIED** in part as set forth in this Order.

**IT IS FURTHER ORDERED** that the Town's Motion to Deposit Money Subject to Interpleader with the Clerk of the Court (Dkt. # 154) is **DENIED**.

DATED this 9th day of June, 2010.

G. Murray Snow
United States District Judge