**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allstate Life Insurance Company, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>Robert W. Baird & Co., Inc., *et .al.*, <br><br>　　　　Defendants. <br>_____ <br>Ronald Covin, *et al.*, <br><br>　　　　Plaintiffs, <br>vs. <br><br>Robert W. Baird & Co., Inc., *et al.*, <br><br>　　　　Defendants. <br>_____ | Lead Case No. CV-09-8162-PCT-GMS <br><br>Consolidated with: <br>Case No. CV-09-8174-PCT-GMS <br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaints Filed by Allstate and the Covin Plaintiffs for Lack of Subject Matter Jurisdiction (Doc. 350). As set forth below, Defendants' Motion to Dismiss is denied.[1]

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

The instant action arises from the offering and sale of $35 million in revenue bonds ("Bonds") used to finance the construction of a 5,000 seat event center in the Town of Prescott Valley, Arizona. Beginning in 2005, Allstate Life Insurance Company ("Allstate") invested $26.4 million in the Bonds. Plaintiff Allstate is the Bondholder with the largest single financial interest in the Bonds. The Covin Plaintiffs invested an additional $9 million in the Bonds. Allstate and the Covin Plaintiffs (collectively "Plaintiffs") purchased these Bonds pursuant to a set of offering documents, entitled the "Official Statements." The Official Statements, which were prepared and/or circulated by Defendants, contained, among other things, information and disclosures pertaining to the purchase, redemption, financing, debt servicing, and security of the Bonds. (*See* Doc. 155, Ex. 1). According to Plaintiffs, however, the Official Statements also omitted critical information, allegedly known to Defendants, that rendered portions of the Statements false or misleading.

Based on this alleged failure to disclose material information, Allstate asserts that Defendants violated § 10(b) of the Securities Exchange Act and that several Defendants violated § 20(a) of the Exchange Act. Allstate also brings state-law claims against Defendants for securities fraud, common-law fraud, aiding and abetting fraud, and negligent misrepresentation. The Covin Plaintiffs likewise assert § 10(b) and § 20(a) securities claims against Defendants, but unlike Allstate do not bring any state-law claims.

Wells Fargo Bank, N.A. was appointed as Indenture Trustee ("Trustee") for the Bonds in the latter part of 2005. As Trustee, Wells Fargo has brought additional claims on the Bondholders' behalf pursuant to its Indenture Agreement with the Bondholders.[2] Trustee raises factual allegations similar to those asserted in Plaintiffs' Complaints. Unlike Plaintiffs, however, Trustee does not assert a federal securities claim. Instead, Trustee brings a breach of contract claim against one of the Defendants, the Town of Prescott Valley. Trustee also

---

[2]Although Trustee is also a plaintiff in this action, its claims are not implicated by Defendants' instant motion.

1  contends that Defendants violated various state securities laws and that they negligently
2  misrepresented the contents of the Official Statements.

3  In April 2010, various Defendants filed numerous motions to dismiss. (Docs. 157–59,
4  164–65, 170, 173–74, 177). In those motions to dismiss, Defendants contended, among other
5  things, that the Trustee *lacks standing* to bring tort-based claims on behalf of Bondholders,
6  and can bring only contract claims. (*See* Doc. 212 at 45). The Court denied Defendants'
7  standing argument, holding that "the plain language of the Indenture of Trust permits the
8  Trustee to pursue tort-based claims on behalf of the Bondholders." (Doc. 212 at 45). In May
9  2011, Defendants filed the instant motion (Doc. 350), in which they try a new tack.
10 Defendants now argue that the Trustee *has exclusive standing* to bring all Bondholder claims,
11 and that the Bondholders therefore lack standing to bring any claims of their own accord.
12 (Doc. 350 at 8–9).

## DISCUSSION

### I.   Legal Standard

The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. *See* Fed. R. Civ. P. 12(h)(3); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see In re Ford Motor Co./Citibank*, 264 F.3d 952, 957 (9th Cir. 2001); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Fenton v. Freedman*, 748 F.2d 1358, 1359, n.1 (9th Cir. 1994). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Kokkonen*, 511 U.S. at 377; *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

In this case, Defendants specifically challenge Plaintiffs' "standing." (Doc. 350 at 2, Doc. 396 at 2–3). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). To be a proper party, a plaintiff must: (1) be the real party in

interest; (2) have the legal capacity to sue and be sued; and (3) have standing to sue. Fed. R. Civ. P. 17(a), (b).

**II.     Analysis**

Defendants contend that Trustee has exclusive standing to bring suit on behalf of all Bondholders, and that the Court should therefore dismiss the claims filed by Plaintiff Allstate and by the Covin Plaintiffs. When Plaintiffs purchased the Bonds at issue in this action, they signed an Indenture of Trust ("Indenture"). Section 10.4 of this Indenture gives the Trustee broad authority to bring claims on the Bondholders' behalf:

> **Section 10.4 Legal Proceeding by Trustee.** If any Event of Default with respect to the Bonds has occurred and is continuing, the Trustee, *in its discretion may* . . . in its own name: (a) by mandamus, or other suit, action or proceeding at law or in equity, enforce *all rights* of the Holders of the Bonds . . . . (Indenture § 10.4 (emphasis added)).

The language of § 10.4 makes clear that the Trustee "may" elect to enforce any right held by any Bondholders. (Indenture § 10.4). This section, however, does not *require* the Trustee to do so. Rather, it is left to the Trustee's "discretion" whether to bring suit. (*Id.*). This optional ability does not, by itself, preclude Bondholders from bringing their own suits.

Defendants argue, however, that § 10.7 of the Indenture prohibits Plaintiffs from bringing suits in relation to the Bonds. Section 10.7 of the Indenture prohibits certain Bondholder actions unless particular conditions are met:

> **Section 10.7 Limitations on Actions by Bondholders.** *No Bondholder shall have any right to pursue any remedy hereunder unless* (a) the Trustee shall have been given written notice of an Event of Default, (b) the Holders of at least a majority of the aggregate principal amount of the Outstanding Bonds shall have requested the Trustee, in writing, to exercise the powers hereinabove granted or to pursue such remedy in its or their name or names, (c) the Trustee shall have been offered indemnity satisfactory to it against costs, expenses and liabilities, and (d) the Trustee shall have failed to comply with such request within a reasonable time. (Indenture § 10.7) (emphasis added).

These conditions were acknowledged by the Court in its order denying Defendants' initial

- 4 -

1   Motion to Dismiss. (Doc. 212 at 49). The Court also noted in that order, however, that
2   "[u]nder § 10.7, any limitation on actions by Bondholders applies only to 'remedies
3   *hereunder*,'—i.e. those remedies that fall within the Indenture of Trust." (Doc. 212 at 49).
4   In other words, § 10.7's limitations do not apply to remedies that lie outside the Indenture.
5   The remedies sought by Allstate and the Covin Plaintiffs arise under statutes and common
6   law, not under the Indenture. Therefore Plaintiffs are not precluded from bringing these
7   claims.

8   In *Kusner v. First Pennsylvania Corp.*, a plaintiff filed suit under § 10(b) of the
9   Securities Exchange Act, alleging that it purchased debentures in reliance on a materially
10  false and misleading prospectus. 531 F.2d 1234, 1236–37 (3d Cir. 1976). The defendants in
11  *Kusner* contended that the plaintiff's § 10(b) action was barred by the indenture under which
12  the securities were issued, which precluded debenture holders from seeking "the enforcement
13  of any [ ] remedy under or upon this Indenture." *Id.* at 1239. The court found, however, that
14  the plaintiff's federal securities law claim "derive[d] not from the indenture, but from federal
15  law." *Id.* The court therefore held that the debenture holders did not assign their federal
16  securities law claims under the indenture. *Id.* As stated, the no-action clause in the instant
17  case is similarly limited in scope. It applies only to claims brought under the Indenture.
18  Because Plaintiffs' fraud and negligent representation claims arise out of Plaintiffs' purchase
19  of the Bonds and not out of Plaintiffs' status as bondholders or the Indenture itself, Plaintiffs
20  have not exclusively assigned these claims to Trustee.[3] *See id. See also Cruden v. The Bank*

---

[3] To be sure, the Indenture makes clear that Trustee has the discretion to pursue all rights of the holders of the bonds, including remedies arising from statute and the common law. That language, however, does not transform all statutory and common law rights into remedies arising under the Indenture. As the Court detailed in its previous order, additional sections of the Indenture make it plain that the remedies arising from the Indenture are not intended to be exclusive of remedies existing "at law or in equity or by statute." (*See* Indenture § 10.9). The Defendants' interpretation of the Indenture would apparently grant Bondholders standing to assert any claims until the Trustee received a written notice of default, at which time such standing would evanesce. Such an interpretation would be unworkable.

- 5 -

*of New York*, 1990 WL 131350 at*12 (S.D.N.Y. Sept. 4, 1990) (holding that debenture holders' RICO and fraud claims did not arise "under the Indenture") *aff'd in part and rev'd in part*, 957 F.2d 961 (2d Cir. 1992). *See cf. Feldbaum v. McCrory Corp.*, Nos. 11866, 11920, 12006, 1992 WL 119095 at *8 (Del. Ch. June 1, 1992) ("No-action clauses . . . will not bar a plaintiff who alleges that she was fraudulently induced to purchase bonds. In such cases, the fraud alleged . . . goes to the question whether the bondholder effectively consented to the transaction, including the no-action clause itself."). Therefore, Plaintiffs have standing to bring them.

Defendants argue that *Kusner* is "inconsistent with governing Ninth Circuit law," and that in the Ninth Circuit "federal securities claims . . . [are] barred by . . . applicable indenture language." (Doc. 396 at 3, 9). This mischaracterizes Ninth Circuit law. Defendants cite *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992), in which a minority group of bondholders appealed the district court's approval of a settlement agreement between the indenture trustee and the bond issuers. *Id.* at 1275–77. Among the terms of that settlement agreement was the provision that any bondholder litigation against the bond issuers relating to the same subject matter was "release[d], dismiss[ed], and enjoin[ed]." *City of Seattle*, 955 F.2d at 1276. The minority group of bondholders, which had already initiated concurrent litigation against the issuers in state court, objected to the trustee's affirmation of the agreement, contending that the trustee lacked authority to enter into the settlement agreement. *Id.* at 1280. The Ninth Circuit, however, affirmed the district court's approval of the settlement agreement, holding that the indenture agreement, which empowered the trustee to institute any suit "in connection with the Bonds," authorized the trustee to settle the claims. *Id.* (quoting the indenture agreement, which stated that the trustee "shall be entitled and empowered . . . to institute such suits, actions and proceedings at law or in equity for the collection of all sums due in connection with the Bonds").

The Ninth Circuit's holding in *City of Seattle* shows merely that an authorized trustee can make binding decisions on behalf of bondholders. It does not imply that bondholders are precluded from bringing their own suits absent indenture language or settlement agreements

1    to that effect. To the contrary, the bondholders in *City of Seattle* were engaged in concurrent
2    litigation in state court up until the settlement. *Id.* at 1276–77. Their concurrent claims were
3    extinguished by the terms of the settlement agreement, not by a no-action clause. *Id.*
4        Defendants also cite *In re Delta Air Lines, Inc.* for the proposition that a Trustee has
5    exclusive standing to enforce bondholder rights. 370 B.R. 537 (S.D.N.Y. 2007). That case,
6    however, unlike the instant case, focused on whether a trustee could bind bondholders to a
7    settlement agreement and involved a dispute between bondholders and the trustee. *Id.* at 540,
8    546. Moreover, the wording of the no-action clause in *Delta* is unlike the language of the no-
9    action clause in this case. In *Delta*, the no-action clause stated that bondholders were not to
10   "prejudice the security of this Indenture, or enforce any right <u>hereunder</u> *or* <u>under the Bonds</u>"
11   unless certain conditions were met. *Delta*, 370 B.R. at 548 (emphasis added). The no-action
12   clause in this case, on the other hand, does not limit bondholder claims under the Bonds. The
13   no-action clause in this case is therefore much narrower in scope than was the no-action
14   clause in *Delta*. In short, neither this case, nor the others cited by Defendants suffice to defeat
15   Plaintiffs' standing as real parties of interest in this case.

16   **CONCLUSION**

17       Plaintiffs have standing to bring this action based on the language of the Indenture.
18       **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss the Amended
19   Complaints Filed by Allstate and the Covin Plaintiffs for Lack of Subject Matter Jurisdiction
20   (Doc. 350) is **DENIED**.
21       **IT IS FURTHER ORDERED** that the stay Order (Doc. 419) is lifted and that the
22   following case deadlines are reset as follows:
23       1.   <u>Class Certification</u>: The deadline for Plaintiffs to file their Reply in support of
24   the Covin Plaintiffs' Motion For Class Certification (Doc. 331) shall be **November 4, 2011**.
25       2.   <u>Fact Discovery</u>: The deadline for completing fact discovery shall be **July 23,**
26   **2012**.
27       3.   <u>Disclosure of Experts and Expert Discovery</u>:
28           a.   The party with the burden of proof shall provide full and complete

1 | expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil
2 | Procedure no later than **August 20, 2012**.
3 |        b.     The responding party shall provide full and complete expert disclosures
4 | as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than
5 | **September 24, 2012**.
6 |        c.     Expert depositions shall be completed no later than **October 11, 2012**.
7 |     4.     <u>Deadline for Filing Dispositive Motions</u>: Dispositive motions shall be filed no
8 | later than **December 21, 2012.**
9 |     5.     <u>Status Conference</u>: A status conference is set for **November 8, 2011 at 3:00**
10 | **p.m.**
11 |     DATED this 20th day of October, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 8 -