**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: Allstate Life Insurance Company Litigation | Lead Case No. CV-09-8162-PCT-GMS<br><br>Consolidated with:<br>Case No. CV-09-8174-PCT-GMS<br><br>**ORDER** |

Pending before the Court are 1) Wells Fargo Bank, N.A.'s Consolidated Motion to Dismiss the Underwriters' and Town of Prescott Valley's Counterclaims (Doc. 263), and 2) Underwriters' Motion to Amend Third-Party Complaint and Counterclaim against Third-Party and Counterclaim Defendant Wells Fargo Bank, N.A. (Doc. 281). As set forth below, Wells Fargo's Motion to Dismiss is granted in part and denied in part.[1] The Underwriters' Motion to Amend is granted.

---

[1] The Town's request for oral argument is denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND[2]**

This action arises from the offering and sale of revenue bonds used to finance the construction of a 5,000 seat event center in the Town of Prescott Valley, Arizona. In 2005, various parties purchased approximately $35 million in Bonds pursuant to a set of offering documents entitled the "Official Statements." The Town of Prescott Valley pledged certain tax revenues to be used to service the Bonds. Wells Fargo Bank, N.A. (the "Trustee") was appointed as the Indenture Trustee for the Bondholders and gained certain rights and responsibilities in relation to the Bonds pursuant to an Indenture of Trust. The Trustee also signed a "Closing Certificate of Trustee," in which it acknowledges its acceptance of certain duties and, the Town alleges, warranted the legal effectiveness of the Indenture.

In 2009, the majority bondholder, Allstate Life Insurance Company, commenced this action against various parties, including the Town and certain Underwriters. Allstate asserts federal and state securities fraud claims, and common-law claims for fraud, aiding and abetting fraud, and negligent misrepresentation. The Trustee has brought additional claims on the Bondholders' behalf, including a common-law negligent misrepresentation claim and a claim under the Arizona State Securities Act, A.R.S. § 44-1991. The Trustee's negligent misrepresentation claim is two-fold. First, the Trustee claims that certain parties, including the Town and various Underwriters, negligently failed to disclose material facts in the Official Statements regarding the economic feasibility of the event center. Second, the Trustee claims that these parties negligently drafted or approved other Bond documents, including the "Indenture, Loan Agreement and related documents," which created "significant administrative and legal impediments to the collection . . . of the Pledged Revenues [from the Town]." (Doc. 130 at ¶¶ 187, 199).

The Town and Underwriters (collectively "Counterclaimants"), meanwhile, have brought counterclaims against the Trustee. (Docs. 230, 237). The Underwriters' sole

---

[2] For a more detailed description of the background and facts, see the Court's Order of November 3, 2010. (Doc. 212).

- 2 -

counterclaim is for contribution. They make three distinct factual assertions in their counterclaim. The Underwriters first allege that the Trustee "substantially participated" in the creation of the Official Statements and that the Trustee's negligence in drafting these statements contributed to any damages to the Bondholders. (Doc. 230 at ¶¶ 48, 50). Second, they allege that the Trustee negligently failed to ensure that the Indenture and other related documents created an adequate mechanism for the Trustee to demand and obtain payment of the Pledged Revenues from the Town. (Doc. 230 at ¶ 51). Third, the Underwriters allege that by acting negligently, the Trustee breached its *contractual* obligations to the Bondholders under the Indenture, which requires that the Trustee exercise the care of a "prudent person." (Doc. 230 at ¶ 52). The Underwriters conclude, therefore, that any loss suffered by the Bondholders in relation to the bonds is the result of the Trustee's negligence and/or breach of its contractual obligations. (Doc. 230 at ¶ 13). They contend that "to the extent that the Underwriters are found liable for any [Bondholder losses], the Trustee is liable to the Underwriters for contribution." (*Id.*).

The Town brings a substantially identical contribution counterclaim against the Trustee, alleging that the Trustee is liable to the Town for contribution due to its negligence and breach of contractual obligations. (Doc. 237 at ¶¶ 59–63). The Town also brings a claim against the Trustee for common law indemnity. The Town makes the same first two allegations in support of its indemnity claim that it and the Underwriters make in support of their contribution claims, namely that the Trustee participated in creating the negligently drafted Official Statements; and negligently failed to create an adequate mechanism for delivery of the Pledged Revenues. (Doc. 237 at ¶¶ 55–58).

The Trustee moves to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 263). The Underwriters, meanwhile, move to amend their counterclaim to include a claim against the Trustee for negligent misrepresentation. (Doc. 281).

**DISCUSSION**

**I.     The Trustee's Motion to Dismiss**

**A.     Legal Standard**

To survive dismissal, a claim or counterclaim must consist of more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that the heightened pleading standard in *Twombly* and *Iqbal* applies to a "complaint *or counterclaim*") (emphasis added). While these factual allegations need not be detailed, a claim "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.     Legal Analysis**

**1.     The Town's and Underwriters' Contribution Claims**

In their counterclaims, both the Town and the Underwriters seek contribution from the Trustee for the alleged losses suffered by the Bondholders. (Docs. 230, 237). The Trustee argues these counterclaims should be dismissed, contending that a contribution claim requires joint and several liability, and that in this case any liability on the Trustee's behalf is several only. (Doc. 263 at 7).

**a.     Choice of Contribution Law**

To determine which state's contribution laws govern this action, the Court applies the choice-of-law rules of Arizona, the forum state. *See Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1178 (9th Cir. 1988). Arizona applies the contribution law of the state "with the most significant relationship to the occurrence and to the parties." *Bill Alexander Ford* v. *Casa Ford, Inc.* 187 Ariz. 616, 618, 931 P.2d 1126, 1128 (App. 1996). *See also*

- 4 -

1 RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145(2). Unlike substantive causes of
2 action, "[c]ontribution does not involve the injured part[ies], rather it concerns the
3 relationship of tortfeasors to each other." *Bill Alexander*, 187 Ariz. at 618 (internal citation
4 and quotations omitted). It is sometimes appropriate, therefore, to apply one state's laws to
5 a substantive cause of action in a case and apply a different state's laws to that case's
6 contribution claim. *See, e.g., id.* ("Although Texas law applied in the action between Sandigo
7 and Casa Ford, the contribution action involves other parties and issues.") (citing *Caterpillar*
8 *Tractor Co. v. Teledyne Indus., Inc.*, 53 Cal. App. 3d 693, 697–98 (1975)). The Court,
9 therefore, rejects the Underwriters' argument that their right to contribution is necessarily
10 "governed by the same law that governs the underlying substantive cause[s] of action." (Doc.
11 280 at 5). Although the instant action involves Arizona, California, and Illinois securities
12 laws, it is not necessary to apply all three states' contribution laws.

13 As stated, contribution involves only the tortfeasors and not the injured parties;
14 therefore state relationships to the injured Bondholders need not be considered in the choice
15 of law analysis. The Court must apply the law of the state with the most significant
16 relationship to 1) the *occurrences* that led to this action and to 2) the alleged *tortfeasors. See*
17 *Bill Alexander*, 187 Ariz. at 618.

18 The occurrences that led to this action took place primarily in Arizona. Not only were
19 the Bonds issued by an Arizona political subdivision, but tax revenues for servicing the
20 Bonds were pledged by an Arizona municipality. (Doc. 212 at 2–3). Moreover, the Bond
21 proceeds were used to finance the construction of an event center located in Arizona. (*Id.*).
22 And the Underwriters and Town assert that "a substantial part of the events or omissions
23 giving rise to the claims asserted herein occurred in [Arizona], and the property that is the
24 subject of this action is located in [Arizona]." (Docs. 230 at ¶ 8; 237 at ¶ 11). Arizona
25 therefore has the most significant relationship to the occurrences that led to this action.

26 Arizona also has the most significant relationship to the alleged tortfeasors. The
27 alleged tortfeasors affected by the instant contribution claims are the Underwriters, the Town,
28 and the Trustee. At the time of the Bond offering, the Underwriters were citizens of, or had

principal places of business in, California, Wisconsin, and Missouri. The Town, however, is a political subdivision of the State of Arizona. (Docs. 130 at ¶ 27; 237 at ¶ 27). And although the Trustee is a citizen of California, it "acted through its employee and agent Nancy Eatros," a citizen of Arizona. (Docs. 230 at ¶ 15; 280 at 9; 286 at 8). None of the alleged tortfeasors involved in these motions has a connection with Illinois, and only one of the Underwriters and Wells Fargo have any connection with California. In short, not only do two of the alleged tortfeasors have significant ties to Arizona, but the occurrences that led to this action took place primarily in Arizona. The Court will therefore apply Arizona contribution law to both the Town's and the Underwriters' counterclaims.

### b.   Arizona Contribution Law

Under Arizona law, a legally cognizable right to contribution exists only where there is joint and several liability. A.R.S. § 12-2501 (2003). Where liability is not joint and several, there is no common liability to discharge and therefore no "right of contribution." *Cella Barr Assocs. v. Cohen*, 177 Ariz. 480, 484–85, 868 P.2d 1063, 1067–68 (App. 1994). In other words, where liability is several only, it is not possible to hold a defendant to an obligation to pay more than its respective share of damages and "the primary reason for contribution disappears." *PAM Transp. v. Freightliner Corp.*, 182 Ariz. 132, 134, 893 P.2d 1295, 1297 (1995). The purpose of contribution is to prevent one defendant from having to bear the burden of all damages when he was not the cause of all damages. *Id*.

Arizona Revised Statutes ("A.R.S.") § 12-2506 abolishes joint and several liability under most circumstances. *PAM Transp.*, 182 Ariz. at 133. The right to contribution in Arizona has therefore been largely eliminated. *Id.* Under Section 12-2506(D), however, a party remains subject to joint and several liability where "the party and the other person were acting in concert;" (2) the "other person was acting as an agent or servant of the party;" or (3) "the party's liability for the fault of another person arises out of a duty created by the federal employers' liability act." A.R.S. § 12-2506(D) (2003).

The Underwriters contend that the Trustee is subject to the "acting in concert" exception. To prove, however, that the Trustee was "acting in concert" with them, the Underwriters must establish that the Trustee participated in committing an *intentional* tort:

> "Acting in concert" means entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively taking part in that intentional tort. Acting in concert does not apply to any person whose conduct was negligent in any of its degrees rather than intentional. A person's conduct that provides substantial assistance to one committing an intentional tort does not constitute acting in concert if the person has not consciously agreed with the other to commit the intentional tort. A.R.S. § 12-2506(F) (2003) (emphasis added).

The only substantive causes of action referenced in the counterclaims are negligence and breach of contract. Neither of these causes of action involve a "conscious agreement . . . to commit an intentional tort."A.R.S. § 12-2506(F) (2003). Nor do the Counterclaimants allege any facts which make it plausible that the Trustee entered into an agreement to commit an intentional tort. They have therefore failed to plead facts which would trigger the "acting in concert" exception to Arizona's general ban on joint and several liability.

In their briefs, the Counterclaimants next contend that the Trustee is rendered jointly and severally liable by the various state securities statutes involved in this action. The Counterclaimants do not allege in the counterclaims themselves, however, that the Trustee committed any substantive securities violations. Although the Underwriters' make a brief, one-sentence reference in their counterclaim to the joint and several liability provisions of several state securities statutes, they do not allege that the Trustee committed the substantive securities violations which would subject the Trustee to these statutes' joint and several liability provisions. (Doc. 230 at ¶ 49). For example, one of the joint and several liability provisions mentioned by the Underwriters is A.R.S. § 44-2003. Section 44-2003(A) provides for joint and several liability for "any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase [of securities]." A.R.S. § 44-2003(A) (2003). Section 44-2003(B), however, limits this grant of joint liability, stating that a party "is jointly and severally liable for damages only if the trier of fact determines that the [party] recklessly or knowingly committed a violation of this chapter." A.R.S. § 44-2003(B)

1   (2003). The Underwriters do not allege in their counterclaim that the Trustee committed a
2   substantive violation of the Arizona Securities Act, much less that the Trustee did so
3   knowingly or recklessly. Nor do the Town or Underwriters plead substantive violations of
4   any other particular securities statutes. They therefore fail to plead facts under which the
5   Trustee would be subject to joint and several liability.[3]

6   Finally, the Counterclaimants contend that even if the Trustee is not jointly and
7   severally liable for their alleged securities violations, they still have a valid contribution
8   claim against the Trustee under both the Private Securities Litigation Reform Act (PSLRA)
9   and A.R.S. § 44-2003(M). The Town does not cite to these statutes or reference their
10  elements in its counterclaim. Rather, the Town first cites to the PSLRA and A.R.S. § 44-2003
11  in its Opposition to the Trustee's motion to dismiss. The Underwriters similarly fail to
12  mention the PSLRA or its elements in their counterclaim, and only make a brief reference
13  to A.R.S. § 44-2003. (Doc. 230 at ¶ 49). The parties may not rewrite their counterclaims in
14  their briefs.

15  It is true that—had the counterclaimants asserted the statutes and necessary factual
16  allegations in their counterclaims—the PSLRA and A.R.S. § 44-2003(M) provide securities
17  violators with a statutory cause of action for contribution:

> A covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other person who, if joined in the original action, would have been liable for the same damages. A claim for contribution shall be determined based on the percentage of responsibility of the claimant and of each person against whom a claim for contribution is made. 15 U.S.C. § 78u-4(f)(8) (2006); A.R.S. § 44-2003(M) (2003).

The Town argues that the "same damages" language means that a securities violator is entitled to contribution from any other tortfeasor who contributed to a plaintiff's damages,

---

[3] To the extent the Underwriters argue that the "alleged misrepresentations pled in the Underwriters' Counterclaim [ ] are the same as those pled by Allstate and [the Trustee], which this Court has already held are sufficient to survive . . . motions to dismiss" (Doc. 280 at 3, 11–14), they fail to take into account that Allstate and the Trustee not only pled material misrepresentations, but also pled substantive violations of particular securities statutes.

- 8 -

1  regardless of whether that tortfeasor itself committed a securities violation. (Doc. 283 at
2  9–10). The Town has not provided, however, nor has the Court found, any authority for such
3  a broad interpretation of this language. To the contrary, at least one court has held that "[a]
4  person sued for contribution under the securities laws must meet the same standard as any
5  other person sued under those laws." *Ray v. Citigroup Global Markets, Inc,.* 2004 WL
6  1794927, at *2 (N.D. Ill. Aug. 4, 2004) (citing *Barker v. Henderson, Franklin, Starnes &
7  Holt*, 797 F.2d 490, 495 (7th Cir. 1986)). In other words, that court held that to be liable for
8  contribution under the securities laws, a person must have violated the substantive provisions
9  of those securities laws, including any scienter requirement that such laws might impose.[4]
10 *See Ray v. Citigroup Global Markets, Inc.,* 2004 WL 1794927 at *3 ("A person can be 'liable
11 for the same damages' as someone else found liable under the securities laws only if the
12 person acted with scienter."). As stated, the Town and Underwriters do not allege in their
13 counterclaims that the Trustee committed a substantive violation of the federal or Arizona
14 securities statutes. (*See* Docs. 230; 237).

15       To the extent that the Counterclaimants identify actual claims against the Trustee that
16 assert the Bondholders were damaged by the Trustee's actions, the Counterclaimants would
17 not need to invoke the contribution provisions in the PSLRA or state statute to prevent a
18 windfall to the Plaintiffs. In such a case, Arizona state law would require the jury to not only
19 determine the amount of damages, if any to the Bondholders, but to also apportion the
20 percentage of fault for the total damages attributable among each identified tortfeasor that
21 the jury finds contributed to the damage. Each party is then responsible only for its
22 percentage of the total liability. A.R.S. § 12-2506(A) (2003). The Court does not, therefore,
23 adopt the Town's broad interpretation of these securities statutes' contribution provisions.

---

[4] Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12 (1976). To adequately plead scienter, a party must allege either intentional misconduct or recklessness. *See id.*

- 9 -

### 2. The Town's Common Law Indemnification Claim

In addition, the Town brings a claim against the Trustee for common law indemnification. Under Arizona indemnity law, "one who has discharged a common liability [can] seek reimbursement in full from another." *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 117–118, 919 P.2d 1381, 1388–89 (App. 1996) (emphasis in original omitted). Indemnity, however, "is an all or nothing proposition damage-wise, and hence should be an all or nothing proposition fault-wise." *Transcon Lines v. Barnes*, 17 Ariz.App. 428, 435, 498 P.2d 502, 509 (1972). It exists "neither to apportion damages nor to balance relative degrees of fault, but 'to give full restitution to one who pays damages but is without personal fault.'" *Id.* at 437. *See also Sprint Communications Co., L.P. v. Western Innovations, Inc.* 618 F. Supp. 2d 1101, 1117 (D. Ariz. 2009) ("[Plaintiff] was negligent itself; it cannot claim a right to common law indemnity.").

In this case, the Town seeks indemnification from the Trustee for two different types of Bondholder loss for which the Town may be found liable. First, the Town seeks indemnification for losses related to the omission of material facts from the "Official Statements." The Bondholders brought claims against the Town for its allegedly negligent omission of material facts from the Official Statements. (Doc. 130 at ¶ 187). In turn, the Town counterclaims that "to the extent that the Town is . . . liable to Bondholders on [these] grounds," it should receive indemnification from the Trustee because the Trustee "substantially participated" in creating the Official Statements. (Doc. 237 at ¶¶ 56–57). The Town further alleges that it has absolutely no fault in relation to the Official Statements because it "did not undertake or have a duty to prepare . . . or review" them. (Doc. 237 at ¶ 6). If the factfinder agrees that the Town is not responsible for the contents of these statements, the Town will not be liable for any such negligent omission. If, on the other hand, the Town is held liable for the omissions in the Official Statements, it will be because the factfinder determined that the Town and the Trustee shared the responsibility for creating the Official Statements. And if the Town and Trustee shared the responsibility for creating the Official Statements, then they would also share any fault for the alleged omissions. Although

- 10 -

1  it is possible for one party to be liable for another's actions even absent personal fault, for
2  example through an agency relationship, the Town has not alleged such a relationship in this
3  case. The Court will not assume that a claimant can prove facts different from those alleged.
4  *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519,
5  526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027,
6  1035 (9th Cir. 2005). In short, the Town has not pled facts under which it could be both
7  without personal fault *and at the same time* liable for the omissions in the Official
8  Statements. Therefore the Town's counterclaim is dismissed insofar as it relates to losses
9  stemming from these omissions.

10  The Town also seeks indemnification, however, for losses related to the Town's
11  alleged failure to deliver certain pledged tax revenues to the Bondholders. (Doc. 237 at ¶ 58).
12  The Town was obligated to make periodic payments of these tax revenues, if necessary, to
13  secure repayment of the Bonds. (Doc. 283 at 7). The Town alleges in its counterclaim,
14  however, that the Trustee "owed a duty to the Bondholders to ensure that there existed an
15  adequate notice procedure in place to enable the Town to timely budget and pay [these] sales
16  tax revenues." (Doc. 237 at ¶ 32). The Town further alleges that the Town's failure to make
17  payments of these revenues was due to the Trustee's failure to fulfill its duty to "ensure that
18  an appropriate and workable procedure existed . . . to enable the Town to make [the] tax
19  revenue payments." (Doc. 237 at ¶ 58). The Town has therefore adequately pled that any
20  obligation by the Town for the missed payments should be discharged by the Trustee because
21  it was the Trustee's unique obligation to ensure that there was a mechanism that would
22  provide timely payment. *See Busy Bee Buffet Inc. v. Ferrell*, 82 Ariz. 192, 196–98, 310 P.2d
23  817, 820–21 (1957) (holding that a party retains its right to indemnity if it breaches its duty
24  "solely through the negligence of the indemnitor"). The Town's indemnification
25  counterclaim therefore withstands the motion to dismiss as it relates to losses resulting from
26  missed payments on the Bonds.
27  / / /
28  / / /

1 **II.     The Underwriters' Motion to Amend**

2 The Underwriters also move to amend their counterclaim to include a negligent
3 misrepresentation claim against the Trustee. As stated, the Trustee brought a claim for
4 negligent misrepresentation against various defendants, including the Underwriters.[5] (Doc.
5 130). In its claim, the Trustee alleged that the Underwriters were responsible for the
6 negligent draftsmanship of the Indenture. (*Id.* at 199). The Trustee further alleged that, due
7 to this negligent draftsmanship, "no adequate mechanism existed for the Trustee to demand
8 payment" of the Pledged Revenues from the Town, resulting in damages to the Bondholders.
9 (*Id.*).

10 The Underwriters now seek to bring their own negligent misrepresentation claim
11 against the Trustee. The Underwriters allege that "[t]he Closing Certificate of Trustee, which
12 Wells Fargo signed and provided to all parties to the offering, intending that they rely on its
13 statements," negligently misrepresented that the Indenture was legally effective. (Doc. 281
14 at ¶ 54). The Underwriters further contend that as a result of the Trustee's misrepresentation,
15 they face potential legal liability to the Bondholders. (*Id.* at 57). In essence, the Underwriters
16 are contending that the Trustee had an obligation to substantively review the Indenture to
17 ensure that it was legally effective and that the Trustee now seeks to hold the Underwriters
18 liable for its negligent performance of this obligation. Therefore, they argue, the Trustee
19 should be liable, in whole or in part, for any damages resulting from the Indenture's alleged
20 inadequacies. (*Id.*). The Underwriters therefore move to amend their complaint to include a
21 negligent misrepresentation claim.

22 "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ.
23 P. 15(a)(2). In deciding this motion, the Court "'must be guided by the underlying purpose
24 of Rule 15 – to facilitate decision on the merits rather than on the pleadings or
25 technicalities.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation omitted).

26

---

27
28 [5] As determined in the Court's Order of November 3, 2010, the Trustee's negligent misrepresentation claim survived the defendants' motions to dismiss. (Doc. 212 at 69–70).

- 12 -

1  "Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with
2  extreme liberality.'" *Id.* This liberality "is not dependent on whether the amendment will add
3  causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir.
4  1987). The Court may deny a motion to amend if there is a showing of undue delay or bad
5  faith on the part of the moving party, undue prejudice to the opposing party, or futility of the
6  proposed amendment. *See Foman*, 371 U.S. at 182. Generally, however, "this determination
7  should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am.*
8  *Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

9  The Trustee's only objection to the Underwriters' motion to amend is that such an
10 amendment would be futile. The Trustee argues that the Underwriters' proposed amendment
11 would be futile for three reasons. First, the Trustee argues that the Closing Certificate of
12 Trustee ("Certificate") certifies the legal effectiveness of the Indenture only as it relates to
13 the Trustee's obligations. Second, the Trustee argues that even if the Certificate does
14 warranty the legal effectiveness of the entire Indenture, the Trustee based this warranty upon
15 legal opinions from other parties' counsel upon which it had the absolute right to rely. Third,
16 the Trustee argues that the Underwriters' proposed amendment does not satisfy the pleading
17 requirements of Rule 8 or Rule 9.

18 First, the Trustee argues that the Certificate validates the Indenture only as it relates
19 to the Trustee's obligations. In the Certificate, the Trustee accepts "the duties and obligations
20 of the Trustee." (Doc. 281, Ex. 1 at 29). One of the duties accepted by the Trustee was the
21 valid execution of the "Trustee Documents," a defined term which includes the Indenture.[6]
22 As part of this duty, the Trustee certified that the Trustee Documents were enforceable:

> 1.  **Acceptance of Duties.** The Trustee is duly authorized to accept and does accept the duties and obligations of the Trustee as trustee, paying agent and registrar pursuant to the Indenture;
> . . . .

---

[6] The term "Trustee Documents" is defined in the Certificate as "the Indenture, the Delivery and Cross Receipt, and [the] Closing Certificate of Trustee." (Doc. 281, Ex. 1 at 29).

- 13 -

> (b) ***Execution of Trustee Documents.*** The Trustee Documents have been duly executed on behalf of the Trustee by the person listed on the Official Signing Power Authority attached hereto as Exhibit A, and said person was at the time of the execution of the Trustee Documents and now is the duly elected or appointed, qualified and acting incumbent of such person's office, and the signature, as stated on Exhibit A, is the true and genuine signature of such officer. <u>The Trustee Documents constitute the valid and binding obligations of the Trustee, enforceable in accordance with their terms, except as by bankruptcy, moratorium, reorganization or other laws or decisions of general application affecting the enforcement of creditors' rights generally</u>.
> The execution and delivery by the Trustee of the Trustee Documents and the performance by the Trustee of its duties under the Trustee Documents have been duly authorized by all necessary corporate action on the part of the Trustee and the execution and delivery of the Trustee Documents and the consummation of the transactions contemplated thereby, and <u>the fulfillment of the terms and conditions thereof, do not contravene the charter or bylaws of the Trustee or conflict with or constitute a breach of or default under any law, administrative regulation, order, consent decree or any agreement or instrument applicable to the Trustee or its property</u>. (Doc. 281, Ex. 1 at 29) (emphasis added).

The Underwriters contend that the above language evidences the Trustee's intent to certify the legal effectiveness of the entire Indenture. The Trustee, meanwhile, contends that the Certificate "pertains only to . . . the *Trustee's* obligations under [the] Indenture." (Doc. 295 at 9) (emphasis added). "The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." *Smith v. Melson, Inc.*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983). A contact is only unambiguous where 1) the language of the contract and 2) all the circumstances surrounding it make "the intent of the parties [ ] clear." *Id.*

The Certificate states that "the fulfillment of the terms and conditions [of the Indenture] do not . . . conflict with or constitute a breach of or default under any law, administrative regulation, order, consent decree or any agreement or instrument applicable to the Trustee or its property." (Doc. 281, Ex. 1 at 29). The language does not so clearly refer only to the Trustee's obligations under the Indenture, that the Court will preclude the Underwriters, at this stage, from discovering facts and circumstances that may shed some

- 14 -

light on the intent of the parties. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993) (holding that where a judge finds that "contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, [ ] evidence is admissible to determine the meaning intended by the parties.")

The alleged circumstances surrounding the certification may shed some doubt on the Trustee's assertion that the Certificate only warrants the legal effectiveness of the Trustee's obligations. For example, the Underwriters allege in their complaint that the Trustee, as the sole representative of the Bondholders, "owed a duty to the Bondholders to insure that there existed an adequate notice procedure in place to enable the Town to timely budget and pay sales tax revenues." (Doc. 281, Ex. 1 at ¶ 25). The Underwriters further allege in their brief that a different party was assigned to provide certificates for each document involved in the Bond offering and that the Trustee was the party assigned to certify the Indenture. (Doc. 312 at 4). In short, the language of the Certificate combined with the alleged circumstances surrounding it do not make the scope of the Trustee's warranty clear. The Underwriters' amendment is not, therefore, futile as a matter of law.

The Trustee also argues that the Underwriters' proposed amendment is futile because the Trustee received two separate opinions from counsel "opining as to the enforceability of the [Indenture]," upon which "the Trustee had the absolute right to rely." (Doc. 295 at 10). Recognizing that motion to dismiss standards apply, the Trustee seeks judicial notice of these legal opinions and of the Bond Purchase Agreement. (Doc. 296). The Court can take notice of "evidence on which the [Underwriters counterclaim] 'necessarily relies' if: (1) the [counterclaim] refers to the document; (2) the document is central to the [counterclaim]; and (3) no party questions the authenticity of the copy attached." *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). This standard is met with respect to the Indenture and the Bond Purchase Agreement. The opinions of counsel, however, are not referred to in the

1  Underwriters' counterclaim.[7] The Court, therefore, does not yet take notice of these
2  documents or any right the Trustee may have had to rely upon them.

3  Finally, the Trustee contends that leave to amend should be denied because the
4  Underwriters have not met Rule 9(b)'s pleading requirements. *See* FED. R. CIV. P. 9(b). The
5  Trustee acknowledges that the Underwriters proposed amendment is "styled as an action for
6  negligent misrepresentation." (Doc. 295 at 11). The Trustee contends, however, that the
7  Underwriters' claim contains "fraud-like accusations" and therefore must meet Rule 9(b)'s
8  heightened pleading requirements. (*Id.* at 12). *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097,
9  1104 (9th Cir. 2003) ("[I]n a case where fraud is not an essential element of a claim, [ ]
10 allegations ('averments') of fraudulent conduct must satisfy the heightened pleading
11 requirements of Rule 9(b)."). In *W.L. Gore & Associates, Inc. v. GI Dynamics, Inc.*, the Court
12 applied Rule 9(b) to a negligent misrepresentation claim. 2010 WL 5184254, at *11 (D. Ariz.
13 Dec. 15, 2010). In that case, the plaintiff claimed that the defendant had promised not to copy
14 the plaintiff's invention, but then nevertheless copied it. The Court held that the
15 circumstances surrounding this alleged promise needed to be pled with more particularity.
16 In that case, however, the plaintiff's negligent misrepresentation claim was "based on the
17 same set of operative facts underlying [a] corresponding claim of fraudulent
18 misrepresentation." *Id.* In the instant case, the Underwriters make no corresponding claim
19 of fraudulent misrepresentation. Moreover, the Trustee does not even attempt to explain
20 which of the Underwriters' accusations are "fraud-like." (*See* Doc. 295 at 12). The
21 Underwriters' proposed claim is not, therefore, subject to Rule 9(b). In addition, the
22 Underwriters' proposed amendment adequately states a claim for negligent misrepresentation
23 under Rule 8. *See* FED. R. CIV. P. 8. This claim is not, therefore, futile.

24 As stated above, however, the Underwriters have failed to state a valid contribution
25 claim. The Court's decision to allow the amendment does not change the analysis of whether

---

[7] The opinions of counsel for which the Trustee seeks judicial notice were referenced in one of the Trustee's counterclaims, but not by the Underwriters' counterclaim, which is the relevant pleading for the instant motion. (*See* Doc. 296).

- 16 -

1 their contribution claim is valid. To the extent that the Underwriters' negligent 2 misrepresentation claim asserts that the damage to the Bondholders was due in part to the 3 Trustee's negligent certification of the indenture as operative, the jury will be required to not 4 only determine the amount of damages, if any, to the Bondholders, but to also apportion the 5 percentage of fault for the total damages attributable among each identified tortfeasor that 6 the jury finds contributed to the damage. Each party is then responsible only for its 7 percentage of the total liability. A.R.S. § 12-2506(A) (2003). Thus, with each party only 8 being responsible for its own fault, there arises no claim for contribution. The Underwriters' 9 "First Claim for Relief (Contribution)" in the amended counterclaim is therefore denied.

## CONCLUSION

For the above reasons, both the Town and Underwriters have failed to state a claim for contribution. The Town has, however, stated a claim for indemnification with respect to losses resulting from missed payments on the Bonds. The Underwriters' proposed amended counterclaim is not futile.

**IT IS THEREFORE ORDERED** that Wells Fargo Bank, N.A.'s Consolidated Motion to Dismiss the Underwriters' Third-Party Complaint and Counterclaim; and Town of Prescott Valley's Counterclaims (Doc. 263) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Underwriters' Motion to Amend Third-Party Complaint and Counterclaim against Third-Party and Counterclaim Defendant Wells Fargo Bank, N.A. (Doc. 281) is **GRANTED**.

DATED this 18th day of November, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge