**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re: Allstate Life Insurance Company Litigation | Lead Case No. CV-09-8162-PCT-GMS<br><br>Consolidated with:<br>Case No. CV-09-8174-PCT-GMS<br><br>**ORDER** |

Pending before the Court is the Covin Plaintiffs' Motion for Class Certification. (Doc. 331). As set forth below, the Covin Plaintiffs' motion is denied.[1]

## BACKGROUND[2]

This action arises from the offering and sale of revenue bonds used to finance the construction of a 5,000 seat event center in the Town of Prescott Valley, Arizona. In 2005, various parties purchased approximately $35 million of the Bonds pursuant to a set of offering documents entitled the "Official Statements." Plaintiff Allstate Life Insurance Company invested $26.4 million and is the bondholder with the largest single financial

---

[1] The Covin Plaintiffs' request for oral argument is denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] For a more detailed description of the background and facts, see the Court's Order of November 4, 2010. (Doc. 212).

1 interest in the Bonds. The Covin Plaintiffs are other bondholders who invested in the Bonds. Defendants are various parties who allegedly inflated projections in the Official Statements of the event center's ability to generate revenues and failed to disclose material information to purchasers of the Bonds, resulting in financial loss to the bondholders.

In 2009, Allstate commenced this action against Defendants by filing federal securities fraud claims against them, along with state-law claims for securities fraud, common-law fraud, aiding and abetting fraud, and negligent misrepresentation. The Covin Plaintiffs likewise assert federal securities fraud claims against Defendants. Five bondholders are named in the Covin Plaintiffs' complaint, but these five individuals seek to represent a much larger class of bondholders.

## DISCUSSION

The Covin Plaintiffs move to certify a class "consisting of all purchasers of the Bonds, other than Allstate, who or which purchased the Bonds following their issuance in November 2005, through May 29, 2008, the date of the first downgrade of the Bonds." (Doc. 331 at 1). The Covin Plaintiffs have not, however, demonstrated that common questions of reliance predominate over individual questions of reliance. Nor are they entitled to the *Affilliated Ute* or fraud-on-the-market presumptions of reliance. Their Motion for Class Certification is therefore denied.

### A.     Legal Standard

A class may not be certified unless it meets each of the four requirements of Rule 23(a), typically referred to as numerosity, commonality, typicality, and adequacy of representation. FED. R. CIV. P. Rule 23(a). In addition, a class action must satisfy at least one of the three requirements of Rule 23(b), one of which is that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. Rule 23(b)(3). The party seeking certification bears the burden of demonstrating that it has met all of these requirements, and "the trial court must conduct a 'rigorous analysis'" to determine whether it has met that burden. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (quoting *Velntino v. Carter-Wallace, Inc.*, 97 F.3d

1227, 1233 (9th Cir. 1996)).

**B.    Legal Analysis**

Plaintiffs move to certify a class of all individuals who purchased Bonds from November 2005 through May 29, 2008. (Doc. 331 at 1). Plaintiffs seek to certify this class under Rule 23(b)(3), which requires that common questions of law or fact predominate over individual ones. FED. R. CIV. P. Rule 23(b)(3). Unless a presumption of reliance is applicable to the entire class, however, Plaintiffs must "prove reliance as to each class member individually." *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009). *See also In re Apple Computer Securities Litigation* 886 F.2d 1109, 1113 (9th Cir. 1989) (holding that unless one of the reliance presumptions applies, each plaintiff "must show individual reliance on a material misstatement"); *In re Taxable Municipal Bonds Litigation*, 1992 WL 165974, at *2 (E.D. La. July 1, 1992) ("[I]n a class action, the fact finder cannot infer the reliance of an entire class from the testimony of a few.") (internal citation omitted). Such "individualized proof of reliance by each class member" violates Rule 23(b)(3) and therefore "preclude[s] class certificatio[n]." *In re Genesisintermedia, Inc. Securities Litigation*, 2007 WL 1953475, at *5 (C.D.Cal. June 28, 2007) (citing *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999)).

Plaintiffs argue that they are "entitled to the [*Affiliated Ute*] presumption of reliance and need not prove reliance on an individual basis." (Doc. 331 at 22). In *Affiliated Ute Citizens of Utah v. U.S.*, the Supreme Court held that plaintiffs are entitled to a presumption of reliance in cases "involving primarily a failure to disclose." 406 U.S. 128, 153 (1972). In other words, reliance is presumed where plaintiffs "primarily allege omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). The Court must, therefore, characterize this case as either primarily an omissions case or primarily an affirmative misrepresentations case. *See id. See cf. In re Duncan*, 2011 WL 3300162, at *6 (9th Cir. BAP 2011) ("In order to determine whether the presumption applies, the court must analytically characterize the action as either primarily a nondisclosure case or a positive misrepresentation case.").

1   There are two instances of fraud alleged in Plaintiffs' proposed complaint.[3] First,
2   Plaintiffs allege that Defendants fraudulently inflated the Official Statements' projected
3   number of events and attendance at the events in order to project higher event revenues.
4   (Doc. 325, Ex. 1 at ¶¶ 5, 55, 65, 67). Second, Plaintiffs allege that Defendants fraudulently
5   omitted from the Official Statements feasability reports conducted in 2001 and 2005 "which
6   would have cast significant doubt on the reasonableness of the projections in the Official
7   Statements." (Doc. 325, Ex. 1 at ¶¶ 68, 125–134).

8   Plaintiffs acknowledge that the alleged inflated projections constitute an affirmative
9   misstatement. They assert that the Official Statements contained an overstated, false and
10  misleading projection that the Event Center would host approximately 133 events per year
11  and have an annual attendance of about 480,000. (Doc. 128 at ¶¶ 9, 129–134). They further
12  assert that the inflated attendance projections resulted in inflated projections of sales tax
13  revenues. (*Id.*). A false projection is a factual misstatement for purposes of Rule 10b-5.
14  *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994) ("A projection or statement of belief is
15  a factual misstatement.") (internal quotation marks omitted); *Marx v. Computer Sci. Corp.*,
16  507 F.2d 485, 489 (9th Cir. 1974) (treating a "forecast of earnings" as a statement of material
17  fact); PslRa, 15 U.S.C. § 78u-5(i) (defining "a projection of revenues" as a forward-looking
18  "statement"); 17 C.F.R. § 230.175(c)(1) (same). Plaintiffs also allege that the false and
19  misleading projections in the Official Statements were "the primary source of information
20  for determining the appropriate investment ratings." (Doc. 331 at 4). They allege, for
21  example that "Fitch Ratings relied on the projected ability of the project to generate sufficient
22  revenues . . . as set forth in the [Official Statements], to designate the Bonds with an 'A-'

---

[3] Plaintiffs alleged a third instance of fraud, namely the Defendants' failure "to disclose in the Official Statements the decision . . . to terminate ERA (the independent third party who prepared the 2005 preliminary feasibility report) rather than have ERA review the new, artificially inflated projections in the Official Statements." (Doc. 325, Ex. 1 at ¶¶ 10, 123 –24). As the Court held, however, in its December 4, 2010 Order, this failure to reveal the ERA's termination was not misleading and therefore was not fraudulent. (Doc. 212 at 14–17).

- 4 -

1   investment-grade rating and to provide a 'Rating Outlook' of 'Stable.'" (*Id.*). They then
2   allege that they "purchased the Bonds in reasonable reliance upon the Official Statements and
3   the [resulting] Bonds' A- investment grade rating." (Doc. 331 at 10). Nevertheless, when
4   discovery demonstrated that four out of the five named plaintiffs did not receive the Official
5   Statements, and the one who did, did not review them, Plaintiffs slightly altered their
6   assertion and stated that "each of the Lead Plaintiffs testified . . . that they purchased the
7   Bonds in reliance on their broker's recommendation, which was in turn based on the
8   fraudulent Official Statements." (Doc. 426 at 7). This assertion does not change the
9   fundamental nature of the allegations of this case as rising from an affirmative misstatement.
10  It only adds an additional layer of complication to the question to the extent that Plaintiffs
11  would be required to show that each Plaintiff based his purchase on the broker's
12  recommendation and the broker based his or her recommendation on the fraudulent Official
13  Statements. To the extent that the broker allegedly based his or her recommendation on the
14  Fitch Ratings, which were allegedly based on the Official Statements, this only adds a third
15  layer of complication but still does not change the nature of the case as arising from an
16  alleged affirmative misstatement.

17       It is true that Plaintiffs allege that Defendants also failed to disclose the 2001 ICC
18  report and the 2005 ERA report. But, that does not make this case primarily one of omission.
19  To the extent the projections were misleading, it was not the failure to disclose the earlier
20  reports that made them so. Nor, by the Plaintiffs' own allegations was it the omitted reports
21  that resulted in the Fitch Rating. That Rating, by Plaintiffs' own assertion, was the result of
22  the inflated projections. (Doc. 331 at 4). The omission is actionable only to the extent that
23  the omitted reports may have "cast significant doubt" on the affirmative misrepresentations.
24  (Doc. 128 at ¶¶ 129–134). In other words, the omission was simply a means of concealing
25  the inflated projections which constituted the affirmative misstatements. This is, therefore,
26  primarily an affirmative misrepresentation case, and the Defendants are not entitled to the
27  *Affiliated Ute* presumption of reliance. *See In re Interbank Funding Corp. Sec. Litig.*, 629
28  F.3d 213, 220–21 (rejecting *Affilliated Ute* presumption of reliance where fraud was best

1  characterized as misrepresentations not omissions); *In re Taxable Mun. Bonds Litigation*,
2  1992 WL 165974, at *2–4 (E.D. La. July 1, 1992) (same).

3  The Supreme Court has also recognized a fraud-on-the-market presumption of reliance in securities cases. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988). *See also In re Connetics Corp. Securities Litigation*, 257 F.R.D. 572, 577 (N.D.Cal. 2009) ("Where, as in this case, an investor pursues a 'fraud on the market' theory of securities fraud, the investor is entitled to a presumption that it relied on any material misrepresentations by the defendant.) "The 'fraud-on-the-market' theory is based on the hypothesis that, in an open and developed securities market, the price of [securities] is determined by the available material information." *Basic*, 485 U.S. at 241. Because the market price on an open and efficient market reflects public information, buyers are presumed to have relied on all such public information by virtue of purchasing a security at that price. *See Desai*, 573 F.3d at 942. *See also Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F.Supp.2d 1113, 1130 (D. Ariz. 2010) ("[R]eliance is generally presumed when the statement in question is issued to the public."). This presumption is only available, however, where the security is traded on an "efficient market." *Binder*, 184 F.3d at1064. *See also In re Connetics*, 257 F.R.D. at 579 ("[A]t this stage, lead plaintiff need show only that [the securities] traded on an efficient market."). Plaintiffs do not contend that the Bonds traded on an efficient market. (*See* Docs. 128, 331, 426). Nor do they provide any expert testimony regarding the issue of market efficiency. *See In re Connetics*, 257 F.R.D. at 579 (presuming the plaintiffs' reliance on alleged misrepresentations because the plaintiffs "cit[ed] the declaration of [an] expert. . . who opin[ed] that the market for [the securities] was efficient during the class period"). Plaintiffs are not, therefore, entitled to a fraud-on-the-market presumption of reliance.

In short, given that Plaintiffs must prove reliance on behalf of each bondholder individually, "questions of law or fact common to class members" do not "predominate" in this case. *See* FED. R. CIV. P. 23(b)(3). Plaintiffs' proposed class cannot, therefore, be certified.

Case 3:09-cv-08162-GMS   Document 439   Filed 12/02/11   Page 7 of 7

**CONCLUSION**

For the foregoing reasons, the Covin Plaintiffs have failed to satisfy their burden of establishing that a class action is the appropriate mechanism for resolving their claims.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 331) is **DENIED**.

DATED this 2nd day of December, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 7 -