**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re: Allstate Life Insurance Company Litigation | Lead Case No. CV-09-8162-PCT-GMS<br><br>Consolidated with:<br>Case No. CV-09-8174-PCT-GMS<br><br>**ORDER** |

Pending before the Court are two related motions: 1) the Covin Plaintiffs' Motion for Leave to Amend Their Second Amended Complaint to Add 10B-5 Claim against Defendant M.S. Stern and to Extend Class Period (Doc. 325); and 2) Plaintiffs' Joint Motion for Leave to Amend Complaints and Counterclaimant's Motion for Leave to Amend Counter Claim (Doc. 374). As set forth below, the Covin Plaintiffs' Motion for Leave to Amend (Doc. 325) is granted in part and denied in part. Plaintiffs' Joint Motion for Leave to Amend (Doc. 374) is granted.

## BACKGROUND[1]

This action arises from the offering and sale of revenue bonds used to finance the construction of a 5,000 seat event center in the Town of Prescott Valley, Arizona. In 2005,

---

[1] For a more detailed description of the background and facts, see the Court's Order of November 4, 2010. (Doc. 212).

1 various parties purchased approximately $35 million of the Bonds pursuant to a set of
2 offering documents entitled the "Official Statements." Plaintiff Allstate Life Insurance
3 Company invested $26.4 million and is the bondholder with the largest single financial
4 interest in the Bonds. The Covin Plaintiffs are other bondholders who invested in the Bonds.
5 Wells Fargo Bank, N.A. (the "Trustee") was appointed as the Indenture Trustee for the
6 Bondholders and gained certain rights and responsibilities in relation to the Bonds.
7 Defendants are various parties who allegedly inflated projections in the Official Statements
8 of the event center's ability to generate revenues and/or failed to disclose material
9 information to purchasers of the Bonds, resulting in financial loss to the bondholders.

10 In 2009, Allstate commenced this action against Defendants by filing federal
11 securities fraud claims against them, along with state-law claims for securities fraud,
12 common-law fraud, aiding and abetting fraud, and negligent misrepresentation. The Covin
13 Plaintiffs likewise assert federal securities fraud claims against Defendants.

14 On November 4, 2010, the Court issued a 75-page order granting in part and denying
15 in part several motions to dismiss filed by Defendants. (Doc. 212). In that order, the Court
16 dismissed Plaintiffs' Rule 10b-5 claims against certain Underwriters, one of which was M.L.
17 Stern, because Plaintiffs "failed to plead their allegations of scienter against the Underwriters
18 with sufficient particularity." (Doc. 212 at 39) ("Plaintiffs have alleged facts indicating that
19 the Underwriters *should* have conducted a more thorough investigation and *should* have
20 become more familiar with the facts before releasing the Official Statements. But these
21 allegations suggest negligence, not knowledge or deliberate indifference.") (emphasis in
22 original). In that Order, the Court also directed that "to the extent [Plaintiffs] seek to amend
23 the defects in their pleadings, they shall have until December 3, 2010 to do so." (*Id.* at 75).

24 On November 17, 2010, the Parties filed a Stipulation in which Plaintiffs notified the
25 Court that they had "elected not to file amended complaints or an amended counterclaim
26 addressing the pleadings defects outlined in the Court's Order dated November 4, 2010."
27 (Doc. 213 at 2). In that document, the Parties also stipulated that Defendants had until
28 January 18, 2011 to answer Plaintiffs' existing complaints. (*Id.*). After reviewing the

1 Stipulation, the Court ordered that the January 18th deadline to respond to existing 2 complaints was to be imposed as stipulated. (Doc. 214). The Court made no mention of 3 Plaintiffs' election not to file amended complaints. (*See id.*).

## DISCUSSION

On May 18, 2011, the Covin Plaintiffs moved for leave to amend their complaint to reassert a Rule 10b-5 claim against Stern and to extend the end of the class period to May 29, 2008.[2] (Doc. 325). On June 17, 2011, Allstate similarly moved for leave to amend its complaint to reassert a Rule 10b-5 claim against Stern. (Doc. 374). In this June 17, 2011 motion, Allstate, the Covin Plaintiffs, and the Trustee also moved for leave to amend their respective complaints and counterclaim to add factual allegations in support of their existing claims. (*Id.*). Also in this June 17, 2011 motion, the Trustee moved for leave to amend its Counterclaim to add a breach of contract claim against the Town.

### I. Legal Standard

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding this motion, the Court "'must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation omitted). "Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Id.* This liberality "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Court may deny a motion to amend if there is a showing of undue delay or bad faith on the part of the moving party, undue prejudice to the opposing party, or futility of the proposed amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### II. Legal Analysis

#### A. Rule 10b-5 Claims against Stern

---

[2] On December 2, 2011, the Court denied the Covin Plaintiffs' Motion for Class Certification. (Doc. 439). Their request for leave to amend to extend the class period is therefore denied as moot.

- 3 -

Both the Covin Plaintiffs and Allstate seek leave to amend their complaints to reassert Rule 10b-5 claims against Stern. (Doc. 325). Plaintiffs allege that new evidence produced by Defendants during discovery "leave[s] no doubt" that an employee of Stern "had actual knowledge of the 2005 Feasibility Report prior to the issuance of the Bonds and therefore knew or should have known . . . that the revenue, event, and attendance figures in the Official Statements were substantially and wrongfully inflated." (Doc. 325 at 6–7; *see also* Doc. 374). Southwest Securities Inc., the successor in interest to Stern, opposes the reassertion of Rule 10b-5 claims against Stern, arguing that the proposed amendments 1) violate the Stipulation; 2) are improper under the amendment standards set forth in *Foman v. Davis*; and 3) violate the Private Securities Litigation Reform Act's ("PSLRA") policy against the use of securities complaints as fishing expeditions. All three arguments are groundless.

### 1.  **The Stipulation**

Southwest first argues that Plaintiffs' proposed amendments violate the Stipulation. (Docs. 355 at 2–5; 385 at 3). In the Stipulation, Plaintiffs notified the Court that they had "elected not to file amended complaints . . . addressing the pleadings defects outlined in the Court's Order." (Doc. 213 at 2). As stated by Plaintiffs, this Stipulation was "part of a good-faith effort to set a deadline for Defendants to answer the Complaint and move this case along." (Doc. 365 at 4). The Court had issued a scheduling order setting December 3, 2010 as the deadline for Plaintiffs to remedy the defects in their pleadings. (Doc. 212 at 75). Knowing that they would not have any basis for remedying these defects by December 3, Plaintiffs essentially stipulated that they would not be filing amended pleadings by this date. (*See* Docs. 213 at 2; 365 at 4). By agreeing not to file amended complaints by the Court's December 3 deadline, Plaintiffs thereby permitted the Defendants to begin the process of answering Plaintiffs' complaints before that December 3 deadline. In short, Plaintiffs did not forever waive their right to remedy the defects in their complaints. *See, e.g., Odom v. Columbia University*, 906 F.Supp. 188, 197 (S.D.N.Y. 1995) (denying leave to amend where the plaintiff signed a stipulation that stated she had "forever waiv[ed] all of her rights to amend"). They simply waived their right to do so prior to the Court-ordered December 3

- 4 -

1  deadline.

2  Given the Court's scheduling order, however, that all defects in the pleadings be
3  remedied by December 3, 2010, Plaintiffs cannot now amend their complaints to remedy
4  such defects unless the Court modifies the case schedule. Rule 16(b)(4) states that a case
5  schedule "may be modified only for good cause." FED. R. CIV. P. 16. This good cause
6  standard primarily considers the diligence of the party seeking the amendment. *Johnson v.*
7  *Mammoth Recreation*, *Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may
8  modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party
9  seeking the extension.'" *Id*. (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983
10 amendment)). "[C]arelessness is not compatible with the finding of diligence and offers no
11 reason for a grant of relief." *Id*. In the instant case, Plaintiffs' failure to remedy the defects
12 in their complaints prior to the December 3, 2010 deadline was not the result of carelessness.
13 Rather, they did not uncover the alleged evidence of Stern's knowledge of the 2005
14 Feasibility Report until after that deadline had passed. And they set forth a case that they
15 were diligent in seeking this evidence. The case schedule may therefore be modified to
16 permit Plaintiffs' proposed amendment.

17 **2.   The *Foman* Standards**

18 In addition, Southwest argues that Plaintiffs' proposed amendments should be denied
19 under *Foman v. Davis* on grounds of futility and prejudice. 371 U.S. 178, 182 (1962)
20 (holding that leave to amend should be freely given unless there is "undue prejudice to the
21 opposing party by virtue of allowance of the amendment, futility of amendment, etc").

22 **a.   Futility**

23 Southwest first argues that the amendment is futile because Plaintiffs "fail to allege
24 any facts to support a 'strong inference' of scienter." (Doc. 355 at 6). To state a valid
25 securities fraud claim, Plaintiffs must "state with particularity facts giving rise to a strong
26 inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).
27 Plaintiffs' new allegations of scienter—namely that Stern reviewed the 2005 Feasibility
28 Report and therefore had actual knowledge that the projections in the Official Statements

- 5 -

1 were inflated—are the same types of allegations that the Court has already concluded meet
2 the scienter requirement with respect to several other Defendants. (*See* Doc. 212 at 33–37).
3 Plaintiffs' proposed amendments are not, therefore, futile on scienter grounds.[3]

4 Southwest next argues that Plaintiffs' amendments would be futile due to their failure
5 to allege reliance. "Reliance by the plaintiff upon the defendant's deceptive acts is an
6 essential element of [a] § 10(b) private cause of action. It ensures that, for liability to arise,
7 the 'requisite causal connection between a defendant's misrepresentation and a plaintiff's
8 injury' exists as a predicate for liability." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
9 552 U.S. 148, 159 (2008) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988)).
10 Southwest mischaracterizes the law, however, when it states that Plaintiffs must have relied
11 upon the Official Statements "directly." (*See* Doc. 355 at 11, 12 n.7). To the contrary,
12 Plaintiffs need only show that but for the misrepresentations in the Official Statements, they
13 would not have invested in the Bonds:

> [T]he causation necessary to demonstrate reliance is not a difficult hurdle to clear in a private right of action under § 10(b). Reliance is often equated with "transaction causation." Transaction causation, in turn, is often defined as requiring an allegation that but for the deceptive act, the plaintiff would not have entered into the securities transaction.

*Stoneridge,* 552 U.S. at 171 (internal citations omitted). Indeed, "[t]he maker of a fraudulent misrepresentation is subject to liability . . . if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other." *Id.* at 172 (quoting the RESTATEMENT (SECOND) OF TORTS § 533 at 72–73 (1977)). Plaintiffs allege in their proposed amendment that they purchased the Bonds in reliance upon the

---

[3] Southwest further contends that because Plaintiffs' proposed complaints also introduce new factual averments regarding a February 1, 2005 Draft ERA Report, Plaintiffs' must also allege scienter on Stern's behalf of this draft report. Plaintiffs' proposed 10b-5 claims, however, are based on the alleged fact that Stern reviewed a copy of the *final* Report, not a draft thereof. (*See* Doc. 374, Exhibit 1 at ¶ 65). Plaintiffs need not, therefore, plead that Stern reviewed or had knowledge of the draft ERA Report.

- 6 -

recommendations of their brokers. (Doc. 325, Ex. 1 at ¶¶ 13–17). They further allege that "[t]he brokers who recommended that Plaintiffs . . . purchase the Bonds did so based on reasonable reliance on the Official Statements." (*Id.* at ¶ 18). Based on these facts, a fact finder could plausibly find that Plaintiffs relied on the misrepresentations in the Official Statements. Plaintiffs have therefore properly alleged reliance.

Southwest lastly argues that Plaintiffs' proposed arguments are "futile in light of the recent Supreme Court decision *Janus Capital Group, Inc. v. First Derivative Traders*." (Doc. 385 at 4). Under § 10(b) and Rule 10b-5, it is unlawful for "any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5(b). *See also* 15 U.S.C. § 78j(b) (statute under which Rule 10-b is promulgated). Under the prior Ninth Circuit interpretation of Rule 10b-5, one could still be liable for "making" an untrue statement, even though one did not actually utter or sign the statement at issue, so long as one "substantially participated" in the preparation, "creation, drafting, editing, or making" of the materially false or misleading statement. *In re Homestore.com Sec. Litig.*, 347 F. Supp. 2d 790, 800 (C.D. Cal. 2004); *see also Howard v. Everex Sys.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000) ("[S]ubstantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements.") (citing *In re Software Toolworks Sec. Litig.*, 50 F.3d 615, 628 n. 3 (9th Cir. 1994)).In *Janus Capital Group, Inc. v. First Derivative Traders*, however, the Supreme Court rejected the "substantial participation" approach, holding that:

> For purposes of Rule 10b–5, the maker of a statement is the person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker.

131 S. Ct. 2296, 2302 (2011) (emphasis added). *See also Rosenbaum v. Seybold*, 2011 WL 3843946, at *19 (N.D. Ind. Aug. 30, 2011) ("Although suits against entities that contribute substantial assistance to the making of a statement may be brought by the SEC, 15 U.S.C.

- 7 -

1 § 78t(e), private parties may not bring such suits.") (citing *Janus*, 131 S. Ct. at 2302).

2 Southwest contends that "ultimate authority" over the Official Statements was held 3 by the issuer of the bonds, the Industrial Development Authority of Yavapai, and by the 4 developer, PVEC, and therefore that Stern could not have "made" the Official Statements 5 under the new *Janus* standard. (Doc. 385 at 4 n.3; Doc. 446). In their proposed amended 6 complaints, however, Plaintiffs allege that Stern "*made* all of the false and misleading 7 statements of fact . . . in the Official Statements." (Doc. 374, Exs. 1 at ¶ 191; 2 at ¶ 200) 8 (emphasis added). Plaintiffs further allege that the names of Stern and the other underwriters 9 were placed "prominently and in bold type on the first page of the Official Statements." 10 (Doc. 374, Exs. 1 at ¶ 191; 2 at ¶ 200). Plaintiffs contend that the underwriters' prominent 11 position on the Official Statements' could only mean that the Official Statements were 12 attributed, at least in part, to the underwriters. (Doc. 444 at 6). And as the Supreme Court 13 held in *Janus*, "attribution within a statement . . . is strong evidence that a statement was 14 made by . . . the party to whom it is attributed." 131 S. Ct. at 2302. Plaintiffs have, therefore, 15 adequately alleged that Stern made untrue statements of material fact. Plaintiffs will 16 ultimately need to prove, however, that Stern, in fact, made such statements by showing that 17 these were statements over which Stern exercised ultimate authority.

18 **b.     Undue Prejudice**

19 Southwest also contends that Plaintiffs' amendment would unduly prejudice Stern by 20 forcing it to "engage in extensive and belated additional discovery." (Doc. 355 at 12). *See* 21 *also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387–88 (9th Cir. 1990) (holding that a 22 proposed amendment would unduly prejudice a defendant where the amendment was filed 23 11 months after the discovery completion deadline); *Morongo Band of Mission Indians v.* 24 *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (rejecting a proposed amendment where the 25 amendment "would have required defendants to have undertaken, at a late hour, an entirely 26 new course of defense"). In this case, however, Plaintiffs filed their proposed amendments 27 shortly after the discovery period began and before the court-imposed deadline for amending 28 pleadings of June 17, 2011. (*See* Doc. 257 at 2; Doc. 325; Doc. 385). Moreover, Stern is

- 8 -

1 already defending similar claims under state securities law and common law, and has already 2 been participating in Plaintiffs' depositions. (*See* Docs. 212, 365). Stern is not, therefore, 3 unduly prejudiced by the proposed revision of Plaintiffs' scienter allegations and the 4 resulting revival of Plaintiffs' § 10(b) claims.

### 3. **The PSLRA**

Lastly, Southwest argues that Plaintiffs' proposed amendments violate the PSLRA's policy against the use of securities complaints as fishing expeditions. The PSLRA states that in a private securities action, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). This provision implies that securities actions are not to be used as fishing expeditions. It does not speak, however, to plaintiffs' use of evidence obtained during subsequent good-faith discovery on other claims. In *Medhekar v. U.S.. Dist. Court for the Northern Dist. of California*, the Ninth Circuit stated that "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." 99 F.3d 325, 328 (9th Cir. 1996). In *Medhekar*, however, the court was determining whether the initial disclosure requirements of Rule 26(a) constituted discovery, and therefore whether initial disclosures should be stayed under § 78u-4(b)(3)(B). *See id.* The court did not speak to whether plaintiffs can amend their complaints after obtaining information through other means.

In short, no court within the Ninth Circuit has held that amendments in PSLRA cases are necessarily barred once discovery commences. To the contrary, at least one court within the Ninth Circuit has held that the PSLRA does not bar such amendments, particularly where the amendment would not add greatly to the expense of discovery. *See S. Pac. Funding Corp. Sec. Litig.,* 83 F. Supp. 2d 1172, 1174–75 (D. Or. 1999) ("I fail to see how the underlying purposes of the PSLRA would be served since the expense of discovery has already taken place."). Amendments to complaints are not, therefore, necessarily barred by the commencement of discovery.

Southwest also cites a Southern District of New York case, *In re Bisys Securities*

- 9 -

1  *Litigation,* for the proposition that the PSLRA bars post-discovery amendments. 496 F. Supp.
2  2d 384, 387 (S.D.N.Y. 2007). Unlike Plaintiffs' 10b-5 claims, however, the claim the
3  plaintiffs sought to revive in *Bisys* had been dismissed with prejudice. *Id* at 386. Moreover,
4  unlike Stern, the defendant in *Bisys* was no longer a party in the action after the dismissal and
5  therefore did not participate in an 18-month period of discovery. *Id.* at 386–87. In the instant
6  case, Plaintiffs' filed their proposed amendments shortly after the discovery period began.
7  (*See* Docs. 257, 325, 374). Moreover, Stern has been defending similar claims under state
8  securities law and common law, and has been participating with the other Defendants in the
9  discovery process. (*See* Docs. 212, 365). Plaintiffs' proposed amendments are not, therefore,
10 barred by the court's holding in *Bisys*.

11        **B.     Additional Factual Allegations**

12        Allstate, the Covin Plaintiffs, and the Trustee also move for leave to amend their
13 respective complaints and counterclaim to add additional factual allegations against
14 Defendants. (Doc. 374; *Id.*, Exs. 1–3). In particular, Plaintiffs seek to allege additional facts
15 regarding the Event Center and its earning potential of which Defendants were aware but
16 which they failed to disclose to investors. (*See id*.). Southwest contends that Defendants, in
17 fact, disclosed these facts to investors, or in the alternative that Defendants had no duty to
18 disclose these facts because they were immaterial. (Doc. 385 at 9–12). Whether Defendants
19 disclosed the facts in question, however, is an issue of fact, and should be determined by the
20 fact-finder. The materiality of any non-disclosed facts is typically also left to the fact finder.
21 *S.E.C. v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) ("Determining materiality in securities
22 fraud cases should ordinarily be left to the trier of fact."). Moreover, the Court finds that
23 Defendants will not suffer undue prejudice as a result of the new factual allegations because
24 these allegations do not create new legal claims but merely provide additional support for
25 existing claims. *TaiMed Biologics, Inc. v. Numoda Corp*., 2011 WL 1630041, at *3 (N.D.
26 Cal. April 29, 2011) (finding that the Defendant "will not suffer significant prejudice because
27 the new factual allegations as to the existing claims do not fundamentally change [Plaintiff's]
28 existing legal claims"); *Apelt v. Ryan* 2011 WL 1377015, at *4 (D. Ariz. April 12, 2011)

1  ("Because the Court can discern no prejudice to Respondents by allowing Petitioner to add
2  the additional factual allegations to his existing claims, the motion is granted."). The Court
3  holds, therefore, that Plaintiffs and the Trustee should be granted leave to amend to add the
4  factual details in their proposed amended complaints and counterclaim.

5        **C.**     **Trustee's Breach of Contract Claim against the Town**

6  In its proposed amended counterclaim, the Trustee alleges that the Town breached the
7  Development Agreement, which requires the Town to deliver certain pledged tax revenues
8  to the Trustee for debt servicing by specified dates. According to the Trustee, the Town's
9  "April, 2011 debt service payment was $542,255 short of the required debt service payment
10 requested by the Trustee." (Doc. 374, Ex. 3 ¶ 290). Plaintiff therefore alleges that it has been
11 damaged "in the amount of at least $542,255." (*Id.*, Ex. 3 ¶ 291). To state a claim for breach
12 of contract, a plaintiff must allege 1) the existence of a contract between itself and a
13 defendant; 2) the breach of such contract; and 3) resulting damages. *Clark v. Compania*
14 *Ganadera de Cananea, S.A.,* 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963). The Trustee has
15 alleged all three of these elements. The Town argues that the Trustee has not adequately
16 alleged a breach because the contract does not entitle the Trustee to debt service payments
17 in the amount "requested by the Trustee." (Doc. 388 at 2). The Trustee, however, has not
18 only plead that the Town failed to pay the amount "requested," but that the Town failed to
19 pay the amount "required." (Doc. 374, Ex. 3 ¶ 290). Its proposed complaint therefore
20 adequately pleads a breach of contract claim and is not futile. To succeed on its claim,
21 however, the Trustee will have to prove that the Town was indeed required to pay the Town
22 an additional $542,255 in April 2011 under the Development Agreement.

23 The Town also contends that the same notice of claim and statute of limitations
24 defects present in the Trustee's initial breach of contract counterclaim also apply to its
25 proposed amended counterclaim. The Trustee's initial counterclaim alleged that the Town
26 failed to make a debt servicing payment in October 2007 as required by the Development
27 Agreement. The Court dismissed this claim in its Nov. 4, 2010 Order, finding that the Trustee
28 had failed to give timely notice of its claim or bring its claim within the required statute of

limitations. (Doc. 212 at 52–53) (citing A.R.S. §§ 12-821, 12-821.01(A)). The breach of contract claim in the Trustee's proposed amended counterclaim, however, is based on an allegedly independent breach that occurred in April 2011, not the October 2007 breach upon which the Trustee's initial breach of contract claim was based. (*See* Doc. 374, Ex. 3 ¶ 290). The Town correctly states that the new breach of contract claim cannot remedy the defects in Plaintiffs' October 2007 claim, such as the lack of timely notice in relation to that claim. (Doc. 388 at 4). The October 2007 claim is not, therefore, revived. The Trustee asserts, however, that timely notice was given in relation to the April 2011 claim, a fact that the Town does not appear to dispute. (Doc. 388 at 4; Doc. 407 at 7). The notice of claim and statute of limitations defects upon which the dismissal of the Trustee's initial breach of contract claim was predicated do not, therefore, defeat the Trustee's new breach of contract claim. (*See* A.R.S. §§ 12-821, 12-821.01(A)).

## CONCLUSION

Plaintiffs' proposed reassertion of Rule 10b-5 claims against Stern does not violate the Stipulation, *Foman*, or the PSLRA. The addition of factual detail to the complaints of Plaintiffs and the Trustee would not unduly prejudice Stern. The Trustee's proposed breach of contract claim, as alleged, would not be futile. The Covin Plaintiffs may not, however amend their complaint to expand the class period.

**IT IS THEREFORE ORDERED** that the Covin Plaintiffs' Motion for Leave to Amend Their Second Amended Complaint to Add 10B-5 Claim Against Defendant M.L. Stern and to Extend Class Period (Doc. 325) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' Joint Motion for Leave to Amend Complaints and Counterclaimant's Motion for Leave to Amend Counter Claim (Doc. 374) is **GRANTED**.

DATED this 23rd day of January, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge