**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: Allstate Life Insurance Company Litigation | Lead Case No. CV-09-8162-PCT-GMS<br><br>Consolidated with:<br>Case No. CV-09-8174-PCT-GMS<br><br>**ORDER** |

Pending before the Court are the Fain Group's Motion for Reconsideration (Doc. 447) and the Town of Prescott Valley's Motion to Reconsider (Doc. 449). For the reasons discussed below, the Fain Group's motion is denied and the Town's motion is granted.

**BACKGROUND**

This action arises from the offering and sale of $35 million in revenue bonds ("Bonds") used to finance the construction of a 5,000 seat event center in the Town of Prescott Valley, Arizona. In 2005, Allstate Life Insurance Company and several other investors (collectively "Plaintiffs") purchased Bonds pursuant to a set of offering documents, entitled the "Official Statements." The Official Statements contained, among other things, disclosures by various Defendants pertaining to the purchase, redemption, financing, debt servicing, and security of the Bonds. (*See* Doc. 155, Ex. 1). According to Plaintiffs, however, the Official Statements and the disclosures within them omitted critical information, allegedly known to Defendants, that rendered portions of the Official Statements false or

1 misleading.

2 Due to these alleged omissions, Plaintiffs assert that Defendants violated § 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, which makes it unlawful, in connection with the purchase or sale of securities, for "any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made . . . not misleading." 17 CFR § 240.10b-5(b). Plaintiffs also allege that several defendants violated § 20(a) of the Exchange Act, which imposes liability on persons who control primary violators of the securities laws. In addition, Allstate brings several state-law claims against Defendants, including claims for violation of the Arizona State Securities Act.

11 At the outset of this case, several defendants filed motions to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). On November 4, 2010, the Court issued an Order denying Defendants' motions in part. As pertinent here, in that Order the Court found that Plaintiffs had adequately alleged that Defendants either "made" or "substantially participated in . . . making" misleading statements in the Official Statements. (Doc. 212 at 25).

17 At the time of the November 2010 Order, case law indicated that one could be liable under Section 10(b) for "making" an untrue statement, even where one did not actually utter or sign the statement at issue, so long as one "substantially participated" in the preparation, "creation, drafting, editing, or making" of the materially false or misleading statement. *In re Homestore.com Sec. Litig.*, 347 F. Supp. 2d 790, 800 (C.D. Cal. 2004); *see also Howard v. Everex Sys.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000) ("[S]ubstantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements.") (citing *In re Software Toolworks Sec. Litig.*, 50 F.3d 615, 628 n. 3 (9th Cir. 1994)). On June 13, 2011, however, in *Janus Capital Group, Inc. v. First Derivative Traders*, the Supreme Court implicitly rejected the "substantial participation" approach:

28 For purposes of Rule 10b–5, the maker of a statement is the

- 2 -

> person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker.

131 S. Ct. 2296, 2302 (2011) (emphasis added). *See also Rosenbaum v. Seybold*, 2011 WL 3843946, at *19 (N.D. Ind. Aug. 30, 2011) ("Although suits against entities that contribute substantial assistance to the making of a statement may be brought by the SEC, 15 U.S.C. § 78t(e), private parties may not bring such suits.") (citing *Janus*, 131 S. Ct. at 2302). Given the Supreme Court's decision in *Janus*, several defendants now move for the Court to reconsider its November 4, 2010 Order. (Docs. 447, 449, 453, 457). Plaintiffs have, at the Court's direction, responded to the motions for reconsideration. (Doc. 467).

**DISCUSSION**

Reconsideration is appropriate where the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The Supreme Court's decision in *Janus* represents an intervening change in controlling law. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 694 n.8 (9th Cir. 2011) (holding that *Janus* "sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others"). It is therefore appropriate for the Court to revisit its November 4, 2010 Order.

Several different groups of defendants have filed motions for reconsideration or notices of joinder thereto: 1) Prescott Valley Signature Entertainment, LLC and Fain Signature Group, LLC (collectively the "Fain Group"); 2) Global Entertainment Corporation, W. James Treliving, and Richard Kozuback (the "Global Defendants"); 3) TL Hocking & Associates, LLC and Thomas L. Hocking (the "Hocking Defendants"); and 4) the Town of Prescott Valley. The Court will review each group's motion or joinder thereto in turn.

/ / /

/ / /

## I.     The Fain Group

Plaintiffs' allege in their complaints that the Fain Group "made false and misleading representations of material fact in the Official Statements and failed to disclose numerous other material facts." (Doc. 122, ¶ 21; *See also* Doc. 128). The Fain Group states, however, that it did not issue the Bonds, and contends that under *Janus*, only the "issuer" of bonds can "make" misleading statements. (Doc. 447 at 4–5).

In *Janus*, the Supreme Court considered whether, in a private Rule 10b–5 action, a mutual fund investment adviser could be held liable for false statements contained in the prospectuses of its client mutual fund. The Court determined that although the investment adviser assisted its client in drafting the allegedly misleading statements, the adviser did not "make" the statements. *Janus*, 131 S. Ct. at 2305 (holding that although the investment advisor "like a speechwriter, may have assisted [its client] with crafting what [it] said in the prospectuses, [the advisor] itself did not 'make' those statements for purposes of Rule 10b–5"). The Court further stated that "the maker of a statement is the person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it." *Id.* at 2302 (emphasis added).

The Fain Group contends that, in the instant case, only the issuer of the Bonds, the Industrial Development Authority of the County of Yavapai ("IDA"), had ultimate authority over the allegedly misleading statements. (Doc. 447 at 4–5). The allegedly misleading Official Statements, however, contain many disclosures attributed to other entities, and state that the IDA is *not* responsible for those disclosures:

> The Issuer has not prepared or assisted in the preparation of the Official Statement, except the statements under this section with respect to the Issuer and the information with respect to the Issuer under the heading "LITIGATION," *and, except as aforesaid, the Issuer is not responsible for any statements made in this Official Statement.* . . . Accordingly, except as aforesaid, the Issuer disclaims responsibility for the disclosures set forth in this Official Statement.

(Doc. 155-1, Ex. 1 at 26) (emphasis added).

As the Court stated in its 2010 Order, many of the allegedly misleading disclosures

- 4 -

1 in the Official Statements are explicitly attributed to the Fain Group. (Doc. 212 at 26) ("On
2 their face, the Official Statements explicitly attribute most of the allegedly misleading event,
3 attendance, and revenue projections to Global Entertainment, Kozuback, the Hocking
4 Defendants, and the Fain Group.") (*See, e.g.* Doc. 155-1, Ex. 1 at 16). Such explicit
5 attribution to the Fain Group of particular disclosures within the Offering Statement makes
6 it likely that the Fain Group exercised ultimate authority over those disclosures. To be sure,
7 the disclosures were not made directly to Plaintiffs, but rather were, with the Fain Group's
8 knowledge, incorporated into the Official Statements. Nonetheless, Rule 10b-5 imposes
9 liability on statements made to plaintiffs either directly *or indirectly*. 17 CFR § 240.10b-5(b)
10 (stating that it is unlawful for "any person, directly or indirectly, . . . [t]o make any untrue
11 statement of a material fact or to omit to state a material fact necessary to make the
12 statements made . . . not misleading"). *Janus* did not abolish Rule 10b-5's restriction on
13 misrepresentations made indirectly. *See Lopes v. Viera*, 2012 WL 691665, at *6 (E.D. Cal.
14 Mar. 2, 2012) ("Given the explicit attribution to Defendant, *Janus* does not preclude liability
15 based upon Defendant making an indirect statement to Plaintiffs.").

16 The Court in *Janus* determined that the investment advisor had not made an indirect
17 misrepresentation because neither the prospectuses nor the disclosures within them were
18 attributed to the advisor. *Janus*, 131 S.Ct. at 2305 ("[W]e need not define precisely what it
19 means to communicate a 'made' statement indirectly. . . . but attribution is necessary."). *See*
20 *also Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 3862206, at *6 (N.D. Ohio
21 Sep. 1, 2011) (stating that "at its most broad" the opinion in *Janus* suggests that the Supreme
22 Court "would require an independent entity's acts to be disclosed before finding liability").
23 In the instant case, however, particular disclosures in the Official Statements are attributed
24 to the Fain Group. (*See, e.g.,* Doc. 155-1, Ex. 1 at 16).

25 In short, the Fain Group's disclosures were made to Plaintiffs indirectly—they were
26 placed in the Official Statements and the Official Statements were then given to Plaintiffs.
27 Nonetheless, given the Official Statements' explicit attribution of the disclosures to the Fain
28 Group, it appears to have had the requisite "ultimate authority" over those disclosures.

Plaintiffs have therefore pleaded facts which make it plausible that the Fain Group violated Rule 10b-5.

The Fain Group next argues that it is not subject to "control person" liability[1] because it did not control the IDA. This argument, however, is based on the above-mentioned faulty premise that, under *Janus*, the IDA is the only entity against which Plaintiffs have stated a valid Rule 10b-5 claim. In fact, as the Court held in its November 2010 Order, Plaintiffs have adequately stated a claim for Rule 10b-5 liability against the Prescott Valley Event Center LLC ("PVEC"). (Doc. 212 at 29).[2] And Plaintiffs have alleged that the Fain Group owns a 50 percent share in—and thereby controls—PVEC. (*See* Doc. 212 at 44). *See also Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (holding that ownership of stock is one of the "traditional indicia of control"); *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 639, 646–47 (C.D. Cal. 1983) (holding that a complaint "more than adequately alleges . . . control through stock ownership" where defendants are alleged to be fifty-percent shareholders of the primary violator). Plaintiffs have therefore adequately pled "control person" liability against the Fain Group.

The Fain Group lastly contends that if the Court's opinion in *Janus* absolves the Fain

---

[1] Section 20(a) of the Exchange Act provides for joint and several liability of persons who control primary violators of the securities laws:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a)

[2] PVEC has not asked the Court to reconsider this ruling and the Court sees no need to revisit it.

- 6 -

1  Group of Rule 10b-5 liability, then the *Janus* opinion also absolves the Fain Group from
2  liability under the Arizona State Securities Act, which is similarly worded to Rule 10b-5. As
3  discussed above, however, Plaintiffs have adequately pled a Rule 10b-5 violation against the
4  Fain Group, even under *Janus*. To the extent, therefore, that the Fain Group seeks this Court
5  to apply *Janus* to the Arizona statute, the Court comes to the same conclusion. Plaintiffs have
6  adequately pled their state-law securities claims against the Fain Group.

**II.     The Global Defendants**

Like the Fain Group, the Global Defendants contend that Plaintiffs' claims of Section 10(b), Section 20(a), and Arizona state-law securities violations must fail because the Global Defendants are not alleged to be the issuer of the Bonds or to have control over the issuer. (Doc. 453 at 1–2). As is the case with the Fain Group, however, particular disclosures within the Bonds' Official Statements are explicitly attributed to the Global Defendants. (*See* Doc. 212 at 26–27). Moreover, like the Fain Group, the Global Defendants allegedly own a 50% share in—and thereby control—PVEC, one of the alleged primary violators of Rule 10b-5. (*See* Doc. 212 at 44). Plaintiffs have therefore adequately pled Section 10(b), Section 20(a), and Arizona state-law securities violations against the Global Defendants.

**III.    The Hocking Defendants**

The Hocking Defendants similarly request dismissal of all Rule 10b-5 and Arizona state securities claims brought against them. (Doc. 457). Like the Fain Group and the Global Defendants, however, the Hocking Defendants incorrectly cite *Janus* for the proposition that only issuers of Bonds can make misleading statements under Rule 10b-5 and its state-law counterparts. (Doc. 457 at 2). As discussed above, one does not need to be the issuer of a security to be liable for making a misleading statement in connection with that security. Even where a misleading statement is disclosed "indirectly," as the statements of the Hocking Defendants are alleged to have been in this action, Rule 10b-5 may impose liability for that statement on the entity to which it is attributed. *Janus*, 131 S. Ct. at 2305 n. 11. The Hocking Defendants' request for dismissal of Plaintiffs' Rule 10b-5 and state-law securities claims will therefore be denied.

The Hocking Defendants also request the dismissal of all Section 20(a) claims against them. Plaintiffs have not, however, brought any claims against the Hocking Defendants for violation of Section 20(a). (*See* Doc. 122, ¶¶ 212–15; Doc. 128, ¶¶ 191–94) (asserting § 20(a) claims against the Fain Group and the Global Defendant, but not against any of the Hocking Defendants). The Court need not, therefore, address this issue.

### III.   The Town

Lastly, the Town requests that, given *Janus*, the Court reconsider its decision that Plaintiffs' have adequately pled their Section 10(b) claims against the Town.[3] Unlike the other defendants, the Town did not "make" the Official Statements or any of the alleged misrepresentations within the Official Statements. Plaintiffs have therefore failed to state valid Section 10(b) claims against the Town.

In the Court's November 2010 Order, the Court held that Plaintiffs had adequately pleaded the existence of misleading statements by the Town because 1) the Town had certified that it did not omit any material facts from the Official Statements, and 2) Plaintiffs had alleged that "the Town participated in the creation of [the] allegedly unreasonable projections" in Table 2 of the Statements. (Doc. 212 at 28). Given the Supreme Court's decision in *Janus* and certain factual developments of which this Court is now aware, Plaintiffs' certification and participation allegations can no longer serve as the basis for a plausible Section 10(b) claim.

#### 1.   Certification Provision

The Town first requests that the Court reconsider its determination that the

---

[3] The Town also states in a footnote that "should it be determined that the *Janus* decision applies to the state law [securities] claims, the Town respectfully reserves the right to seek reconsideration of the ruling as to those claims as well." (Doc. 449 at 20 n. 11). Although the Town has yet to seek reconsideration of these claims, the Court notes that, unlike the federal Securities Exchange Act, the Arizona State Securities Act appears to create liability for one's participation in creating a misleading statement even where one is not the "maker" of the statement. *See* A.R.S. § 44-2003(A) ("[A]n action . . . may be brought against any person, including any dealer, salesman or agent, who made, *participated in* or induced the unlawful sale or purchase.") (emphasis added).

- 8 -

1 "certification" provision in the Official Statements is a plausible basis for actionable
2 misstatement by the Town. This provision states that the Town will, at closing, certify the
3 information attributed to it in the Official Statements and certify that such information does
4 not omit any material fact:

> The Borrower, the Town and the Underwriters will all, at closing, deliver certificates certifying that the information each supplied does not contain any untrue statement of a material fact or omit to state a material fact required to be stated herein or necessary to make the statements herein, in light of the circumstances under which they were made, not misleading.

(Doc. 155-1, Ex. 1 at i).

Although Plaintiffs did not, in their complaints, raise this certification provision as a basis for their Section 10(b) claims, the Court took judicial notice of the provision in its November 2010 Order. (Doc. 212 at 28). The Court reasoned that the Official Statements' representation that the Town would provide the above mentioned certification to Bond purchasers made it likely that such a certification had indeed been made. If such a certification had been made, it may have been an adequate factual basis for Section 10(b) liability. This is because the Town is alleged to have had knowledge of material projections that were omitted from the Official Statements. (*See* Doc. 122, ¶ 45). And if the Town had knowledge of such omitted projections, a statement by the Town that the Official Statements do not contain omissions of material fact would be misleading.

The Town now asserts, however, and Plaintiffs do not deny, that the Town did not, in fact, furnish such a certification at closing. (Doc. 449 at 10) ("The actual certificate makes clear that the Town did not certify factual statements made by others in the OS, as assumed in the Court's November 4, 2010 Order."). Plaintiffs therefore contend that the certification provision in the Official Statements is misleading for a different reason—"because the Town apparently never intended to provide the certification the OS said it would." (Doc. 467). To be sure, the Official Statements' representation that the Town would provide a certification may have been an untrue statement of material fact. Plaintiffs' have not, however, alleged facts which make is plausible that the Town had ultimate authority over—and therefore could have made—this representation. *See Janus*, 131 S. Ct. at 2302. Rather it appears that this

- 9 -

1 representation was made by those to whom the Official Statements themselves are 2 attributed—namely PVEC and/or the Underwriters. (*See* Doc. 212 at 29; Doc. 461 at 8). In 3 short, Plaintiffs have not alleged facts or produced documents which make is plausible that 4 the Town made a misleading certification. Accordingly, the certification provision in the 5 Official Statements is not a valid basis for a Section 10(b) claim against the Town.

### 2. Participation Allegation

The Town also contends that, given *Janus*, the Court should reconsider its determination that the Town's alleged participation in the creation of inflated projections in the Official Statements is a valid basis for Section 10(b) liability. In its November 2010 Order, the Court held that because the Town allegedly "made substantial contributions" to the misleading projections, Plaintiffs' had adequately alleged misrepresentations of fact by the Town. (Doc. 212 at 28). This holding was based on existing Ninth Circuit case law which stated that "substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements." *See Howard v. Everex Sys.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). As discussed above, however, in *Janus* the Supreme Court determined that to "make" a misleading statement, it is not enough to have assisted in the making of the statement. 131 S. Ct. at 2302. Rather, to "make" a statement one must have "ultimate authority over the statement." *Id*. *See also Rosenbaum*, 2011 WL 3843946, at *19 ("Although suits against entities that contribute substantial assistance to the making of a statement may be brought by the SEC, 15 U.S.C. § 78t(e), private parties may not bring such suits.") (citing *Janus*, 131 S. Ct. at 2302).

In their complaints, Plaintiffs allege that "Global [ ] substantially and wrongfully inflated the revenue, event and attendance figures in the Official Statements," and that the Town had knowledge of these inflated figures. (Doc. 122, ¶¶ 129, 131; *See also* Doc. 128, ¶ 139). In addition, the Official Statements imply that the Town contributed to these allegedly misleading projections by supplying Global and the Fain Group with the Town's historical tax-revenue data. (*See* Doc. 212 at 28; Doc. 155-1, Ex. 1 at 16). This historical

- 10 -

data, however, which is not alleged by Plaintiffs to be misleading, is the only representation in the Official Statements attributed to the Town. (Doc. 155-1, Ex. 1 at 16) ("Actual Sales Taxes . . . are provided by the Town of Prescott Valley."). The allegedly misleading projected sales tax revenues are attributed to the Fain Group. (*Id*.). (attributing projected sales taxes to the "Fain Signature Group"). Because the statements of historical data are not alleged to be misleading, and because the allegedly misleading projected sales tax revenues are not attributed to the Town, Plaintiffs have not alleged facts which make is plausible that the Town made (i.e. had ultimate authority over) misleading statements. Plaintiffs have not, therefore, stated valid Section 10(b) claims against the Town. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").

## CONCLUSION

For the foregoing reasons, Plaintiffs have adequately pled Section 10(b), Section 20(a), and state-law securities claims against the Fain Group and the Global Defendants. Plaintiffs have also pled valid Section 10(b) and state-law securities claims against the Hocking Defendants. Plaintiffs have not pled valid Section 10(b) claims against the Town of Prescott Valley.

**IT IS THEREFORE ORDERED:**

1.   Fain Signature Group LLC and Prescott Valley Signature Entertainment, LLC's Motion for Reconsideration (Doc. 447) is **DENIED**.

2.   The Town of Prescott Valley's Motion to Reconsider (Doc. 449) is **GRANTED.**

3.   Plaintiffs' Section 10(b) claims against the Town of Prescott Valley are dismissed.

DATED this 24th day of May, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge