**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: Allstate Life Insurance Company Litigation | No. CV-09-08162-PCT-GMS |
| | **ORDER** |

Pending before the Court is Defendants' Joint Motion to Dismiss Claims of Non-Party Bondholders. (Doc. 530.)  For the reasons discussed below, Defendants' motion is denied in part and granted in part.

## BACKGROUND[1]

This action arises from the offering and sale of revenue bonds used to finance the construction of a 5,000-seat event center in the Town of Prescott Valley, Arizona. In 2005, various parties purchased approximately $35 million in bonds pursuant to a set of offering documents entitled the "Official Statements" ("OS"). The Town of Prescott Valley pledged certain tax revenues to be used to service the bonds. Wells Fargo Bank, N.A. (the "Trustee") was appointed as the Indenture Trustee for the bondholders and gained certain rights and responsibilities in relation to the bonds pursuant to an Indenture of Trust. For instance, pursuant to the Indenture of Trust, the Trustee obtained authority

---

[1] For a more detailed description of the background and facts, see the Court's Order of November 3, 2010 (Doc. 212).

1  to bring claims on the bondholders' behalf.

2      In 2009, the majority bondholder, Allstate Life Insurance Company, commenced

3  this action against various parties, including the Town and certain Underwriters (the

4  "Defendants"). Allstate asserts federal and state securities fraud claims, and common-law

5  claims for fraud, aiding and abetting fraud, and negligent misrepresentation. The Trustee

6  has brought additional claims on the behalf of individual bondholders, including a

7  common-law negligent misrepresentation claim and a claim under the Arizona State

8  Securities Act, A.R.S. § 44-1991.

9      On April 5, 2011, Defendants served interrogatories on the Trustee seeking

10  individualized information about specific bondholders, particularly with respect to their

11  individual reliance and the remedies each sought. Because Defendants found the

12  Trustee's responses to be inadequate, the parties sought a telephonic discovery

13  conference with the court.

14      On March 8, 2012, the Court held a telephonic conference with the Parties

15  concerning items of discovery. Despite the years that this case had been ongoing, the

16  Trustee had not yet responded to Defendant's interrogatories concerning the Trustee's

17  state law claims or identified the individual brokers, bondholders, and accompanying

18  evidence on which it intended to base these claims. Accordingly, the Court ordered the

19  Trustee to "identify all such witnesses and potential exhibits by no later than June 15,

20  2012." (Doc. 495.) The reason for requiring the Trustee to identify the witnesses was so

21  that the Defendants would have time, within the remaining discovery period, to depose

22  those witnesses and conduct further discovery of the facts upon which the Trustee

23  intended to build its case.  Thus, the Court directed that "[a]fter the Trustee has identified

24  such witnesses and potential exhibits, the Defendants on these claims will have until July

25  2, 2012 to evaluate the witnesses and, if necessary, to request an extension in the

26  discovery deadlines and remaining case schedule to take appropriate discovery of the

27  persons and items identified." (*Id.*)

28      Following the Court's March 8 order, the Trustee sent questionnaires to individual

bondholders asking them for basic contact information, the face value and date of purchase of their bonds, the name of the broker and brokerage firm from which they purchased the bonds, and information regarding their reliance on either the Official Statements or their broker recommendations. (*See* Doc. 550-1.) By June 15, the Trustee provided Defendants with two spreadsheets identifying the bondholders on behalf of which the Trustee purports to bring claims. On June 22, 2012, the Trustee consolidated these two spreadsheets, and produced a single list of 195 bondholders.[2] (Doc. 532.) The Trustee also produced completed questionnaires which it had received back from 142 of the individual bondholders. (Doc. 550-1.) Of the 195 listed bondholders, fifty-three never returned the questionnaires. (Doc. 532-2 at 2.) Twenty-seven responded by either checking "No," "Do Not Recall," or leaving blank the questions asking if they relied on either the OS or their brokers in purchasing the bonds.[3] (*Id.* at 4, 10–11.) Ninety-seven responded that they relied on their brokers in making their purchases.[4] (*Id.* at 8, 10–11.) Only eighteen of them responded that they had relied on the OS.[5] (*Id.* at 9, 10.)

The Trustee also produced on June 15 a general statement of the evidence it intended to rely on:

> account statements, trade confirmations, and other documents relating to bond transactions obtained from bondholders and/or their custodians, deposition testimony and exhibits from the depositions of defendants Edward Jones, R.W. Baird, and Southwest Securities, and their employees, and of third-party brokers, RBC/Voyageur and Lawson Financial, and their employees, including Mary Piontek, Stina Wishman, Joseph Riley, John Gresham, Drew Kanyer, Charles Howell, Brett Kimes, Terry Forsberg, and Raye Kanzenbach, as well as deposition testimony and bond transaction documents from Individual Plaintiffs Ronald Covin, Bernard Patterson, Allen Patzke, Walter Krause and Larry Verhulst. (Doc. 542 at 4.)

---

[2] The original list produced by the Trustee contained 206 names. However, the list included the five named plaintiffs, whose claims are not at issue here. It also included six names which appeared twice. Taking out the named plaintiffs and the bondholders whose names were repeated, the number of remaining bondholders is 195.

[3] This number includes twenty-four bondholders who purchased in the original offering and three bondholders who purchased in the secondary market.

[4] This number includes eighty-one bondholders who purchased in the original offering and sixteen bondholders who purchased in the secondary market.

[5] This number includes seventeen bondholders who purchased in the original offering and one who purchased in the secondary market.

The Trustee later stated in an email that it did "not intend to call the individual broker/financial advisers who sold the bonds and who are identified on [the chart of 195 bondholders]." (Doc. 530-9 at 1.) However, it reserved the right to call the witnesses from Stern (succeeded by Southwest Securities), Baird, Jones, Lawson, and RBC which it identified in its June 15 disclosure. (*Id.*)

The Defendants asserted that the Trustee's disclosure of the questionnaires, spreadsheets, and list of evidence did not adequately comply with the Court's March 8 Order requiring the Trustee to identify "all witnesses and potential exhibits" on which it based its claims for state securities violations and negligent misrepresentation under state law. (Doc. 595.) On June 26, the Court held a telephonic conference with the Parties to resolve the question. (Doc. 517.)

As a result of its determination that the Trustee's June disclosures may have been insufficient to support the elements of the two claims based on state law, the Court authorized Defendants to file a single brief "directed to the . . . contention that [the Trustee] has failed to identify specific facts with respect to the individual plaintiffs that [it] designated on June 15 sufficient to state a claim based on reliance under either Arizona state securities statutes or the common law of [negligent misrepresentation]." (Doc. 517.)  The Court set dates for the briefing.

Despite the pending briefing schedule on the adequacy of the disclosures made by the June 15 deadline, the Trustee continued to research facts pertaining to the individual state claims that it asserted on behalf of the individual Plaintiffs. For example, it disclosed sixty-three affidavits from individual plaintiffs based on follow-up telephone conversations that it had with these individuals in August—more than two months after the Court's deadline. (Doc. 550-2.)

Defendants now bring a Rule 37 motion for discovery sanctions, requesting that the Court dismiss Counts 1 and 2 of the Trustee's Complaint for failing to comply with the Court's March 8 Order. Defendants assert that this sanction is appropriate because the Trustee's disclosures "did not elicit meaningful [bondholder]-specific evidence about

what exactly any [bondholder] relied on, or knew or did not know, in connection with" the bondholder's decision to purchase. (Doc. 530 at 3.) In opposition, the Trustee contends that it fully complied with the March 8 Order, (Doc. 542 at 3), and that its lack of specifics on the issue of reliance is irrelevant because (1) the majority of bondholders relied on their brokers, rather than specific statements in the OS, and (2) reliance is not required for the state-law securities claim (*id.* at 16–17). In addition, the Trustee requests that the Court consider the claim of an additional bondholder not disclosed in the June 22 list of 195 bondholders. (*Id.* at 5 n.2.)

## DISCUSSION

### I.      Legal Standard

Federal Rule of Civil Procedure 37 gives a district court power to issue whatever orders "'are just' in regard to a party's failure to obey a discover order." *Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998); FED. R. CIV. P. 37(b)(2)(A)(v). This includes the power to sanction a party by "dismissing the action or proceeding in whole or in part." S*ee Valley Eng'rs*, 158 F.3d at 1056 (9th Cir. 1998); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) ("Where oral proceedings unequivocally give a litigant notice that certain documents are to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply."). Similarly, under Rule 41 a district court may dismiss a claim or the action for a party's failure to comply with the Federal Rules of Civil Procedure or an order. FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."); *see Fid. Philadelphia Trust Co. v. Pioche Mines Consol., Inc.*, 587 F.2d 27, 29 (9th Cir. 1978) (a plaintiff has the general duty to prosecute his case).

### II.     Analysis

#### A.      Bondholders Not Identified as of the June 15, 2012 Deadline

Defendants first argue that the Trustee is precluded under Rules 37 and 41 from bringing claims on behalf of any bondholders which were not identified as of the June 15,

2012 deadline. (Doc. 530 at 8.) In determining whether a plaintiff's failure to comply with a discovery order warrants dismissal, a district court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). In this case, each of these factors weighs in favor of precluding the Trustee from prosecuting claims for bondholders not identified by the Court-imposed deadline.

### 1.   Judicial Efficiency.

The first two factors—the public's interest in expeditious resolution of litigation and the Court's need to manage its docket—relate to judicial efficiency, *see Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1279 (9th Cir. 1980), and therefore are usually reviewed in conjunction, *see In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). These two factors generally favor dismissal. *See Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990). The touchstone of dismissing a case for lack of prosecution, however, remains a finding of an unreasonable delay. *See In re Eisen*, 31 F.3d at 1451 (citing *Henderson*, 779 F.2d at 1423).

The Ninth Circuit has recognized that a district court's determination as to what is unreasonable is to be deferred to, as the district court "is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *Id*. (citing *Henderson*, 779 F.2d at 1423). In this case, the Trustee, which filed its complaint over two years ago, (Doc. 130), has waited until the eve of the expiration of the discovery period to identify the specific bondholders on behalf of which it wishes to bring claims. Moreover, the Court gave the Trustee a clear deadline after which it was to be precluded from identifying additional bondholders. The Trustee has not identified good cause for why this deadline should be modified. Allowing the Trustee to wait any longer before identifying individual bondholders would create unreasonable delay.

### 2.    Fairness to the Litigants.

The next two factors—the risk of prejudice to the defendants and the public policy favoring disposition of cases on their merits—"implicate a federal interest in fairness to litigants." *Nealey*, 662 F.2d at 1279. With respect to undue prejudice, the Trustee's excuse for its delay must be "anything but frivolous." *Id*. at 1281. Here, the Trustee has not provided *any* excuse for its failure to identify and acquire a questionnaire prior to the June 15 deadline from the bondholder it seeks to add. (*See* Doc. 542 at 6 n.2). The Court's dismissal of this bondholder's claim is not, therefore, unreasonably prejudicial. The fourth factor—the preference for resolving a case on the merits—"cuts against a default or dismissal sanction." *Wanderer*, 910 F.2d at 656. The Court does not find any reason to disturb this general principle, particularly in light of its discussion of prejudice and the fact that the third and fourth factors both relate to fairness. *Nealey*, 662 F.2d at 1279.

### 3.    Less Drastic Sanctions.

Lastly, the Court is to consider the availability of less drastic sanctions. "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson*, 779 F.2d at 1423 (citation omitted). In this case, however, the Trustee had nearly two and a half years to identify bondholders, and failed to do so until the eve of the expiration of the discovery period. To provide the Trustee with any more time to identify bondholders would require the Court to extend the discovery period even further than it has already done and would prejudice the numerous other parties to this lawsuit. The Court finds, therefore, that no less drastic sanctions are available.

In short, based on its examination of the Rule 41(b) factors, the Court finds that the Trustee is precluded from bringing claims on behalf of those bondholders which were not identified as of the June 15, 2012 deadline. The Trustee's request to add a claim on behalf of the Catholic Diocese of Wilmington, Delaware is therefore denied. (*See* Doc. 542 at 5 n.2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.    Bondholders Identified as of the June 15, 2012 Deadline

Defendants also contend that the Court should dismiss the Trustee's claims on behalf of those bondholders identified in the spreadsheets and questionnaires produced by the Trustee. Defendants contend that the Trustee's questionnaires "did not request, and therefore did not elicit, meaningful Holder-specific evidence about what exactly [these bondholders] relied on" in their purchase of the Bonds. (Doc. 530 at 3). Where reliance is concerned, the completed questionnaires generally elicited only a bondholder's "Yes," "No," or "Do not recall" answer to questions such as "did you rely on the recommendation of the broker[?]" and "did you rely on the accuracy and completeness of the Official Statement[?]" (*See* Doc. 550-1). Defendants contend that because the Trustee did not "elicit any specific information as to what particular aspect of the [Official Statements] the respondent . . . relied on, or what the specific basis was for any recommendation by a broker," Defendants are unable to "link" the respondent's alleged reliance "to any alleged misstatement." (Doc. 530 at 3, 4).

Rule 26(a)(1)(A)(i) requires a party to provide, in addition the address and telephone number of each individual likely to have discoverable information, the subject of the information likely to be provided. FED. R. CIV. P. 26. For documents, Subsection(a)(1)(A)(ii) requires either a copy of the document or a description by the document's category and location. Furthermore, Subsection (a)(3)(A) requires a party to disclose with specificity each witness it intends to present, including those whose testimony is to be presented by deposition, as well as specific identification of each document or other exhibit intended to be presented. Finally, Subsection (e)(1)(B) requires a party who has made a disclosure to supplement or correct that disclosure as ordered by the court. Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37.

The information produced by the Trustee as of June 15, 2012 as to the 195

bondholders does not comply with the rudimentary obligations of Rule 26. While the list discloses the identity of individuals likely to have discoverable information, only for those bondholders who returned questionnaires can it plausibly said that the "subject" of their discoverable information has been disclosed. It is unclear what information could be offered by the fifty-three bondholders who failed to respond to the questionnaires, and the Trustee's disclosure of them, without more, is in violation of Rule 26(a)(1)(A)(i). Therefore, in accordance with Rule 37(c)(1), the Trustee is barred from offering any testimony by those fifty-three bondholders.[6]

Furthermore, it is unclear how the twenty-seven bondholders that responded "No," "Do Not Recall," or left blank the questions asking if they relied on the OS or their brokers could provide information necessary to establish the elements of the claims of negligent misrepresentation or state securities violations. The Trustee has failed to disclose how the discoverable information possessed by these bondholders could support the claims it asserts on their behalf, thus violating Rule 26(a)(1)(A)(i) and Subsection (e)(1)(B). It is therefore precluded from offering any testimony relating to causation or damages by these twenty-seven bondholders.[7]

---

[6] Specifically, the Trustee is precluded from offering testimony from the following bondholders: James C. & Christine B. Akers, Linda L. & William R. Beinke, Walter D. Bethoon & Addie M. Novaria–Bethoon, Keith & Barbara Bitzinger, C-2 Construction, Captive Investors, Mario J. Cirio, Sally L. Clark, Kenneth Cude, Pablo G. De Leon, Samuel Dempster, Arlene Dotts, Rita Echenique, Lennis & Richard Elston, Barry Evans, Bruce W. Ewing, Karl Richard Gerlitz & Anita Dabney Jones–Gerlitz, Lucinda M. & Kenneth E. Gerlitz, Betty T. Gleason, Fred Grapel, Marvin Groseth, Henry T. Hudson, Jr., Stephen Korey, Margaret Luebbers, Barbara Lurie, Billy G. Massey, Jeanine Mackintosh, Maxicor, Kathleen E. Milford, Edna F. Mlady, Patricia M. Mosbacher, David Ornoff, William E. & Nettie I. Postlewait, Charlotte & Jack Prescott, Lorraine Quayle, Amin Radparvar, Donald W. & Julia M. Rawn, Florence Reed, Norman Rothenbaum, Gloria Saiers, Daniel & Doris R. Sanchez, Mark Sanchez, Roland & Esther Sanchez, Betty F. Schonthal, Mortan & Susan Shane, Jack C. Silhavy, Kenneth Smith, Jack & Paula Strickstein, Dennis Swapp, Joan L. Titland, Herman R. Van Lier, Frances A. & Terrence L. White, and Emerson H. Young.

[7] Specifically, the Trustee is precluded from offering testimony on causation or damages from the following bondholders: Therese Anthony, Lisa M. Audlin, Beverly Bledsoe, Ronald T. Chehy, Emil & Theresa DePiero, Brian C. Donovan, Alvin Curtis Earls, Kester D. & Ann Haugh, Wendy A. Laude, Pauline Lovato, New Jersey Statewide Building Laborers Pension Fund, Operating Engineers Local #49 Health and Welfare, Bernard A. Patton, Neil R. & Gayle S. Potter, Production Sheet Metal Workers' Local 10 Retirement Plan, Laurence V. Rosa, Lenore M. Sesner, Harold J. Smith, Byron & Dorothy A. Snyder, State Bank & Trust, United Food and Commercial Workers Union Local #789 &

Furthermore, the Court ordered the Trustee to identify and disclose "all witnesses and potential exhibits" on which it based its claims for negligent misrepresentation and state securities violations. (Doc. 495.) Aside from the 195 bondholders on the list and the five named plaintiffs, the Trustee did not identify with specificity the witnesses it intends to call in its June 15 disclosure. It only stated generally that it intended to rely on the deposition testimony and exhibits of the Defendants, third-party brokers, and the employees of each. (Doc. 542 at 4.) This violates Rule 26(a)(3)(A)(ii) and Subsection (e)(1)(B). To the extent that the Trustee failed to specifically identify the individuals it wishes to call as witnesses, it is precluded from calling them. Only the nine employees expressly named in the June 15 disclosure will be permitted to be called.[8]

With regard to documents, the Trustee has only disclosed a vague and general list of the types of documents it would like to use at trial. It has not come close to providing either copies or specific descriptions, by category and location, of those documents. The information provided lacks the specificity necessary to comply with the Court's order or allow the Defendants to adequately conduct their own discovery. The single paragraph disclosed by the Trustee describing the documents it intends to rely on fails to meet the requirements of Rule 26(a)(1)(A)(ii), Subsection (a)(3)(A)(iii), and Subsection (e)(1)(B). As such, the Trustee is precluded from offering at trial any documents or exhibits in support of its state law claims on behalf of the individual bondholders that were not specifically and individually identified as of the June 15 deadline.

The less than adequate disclosure prior to the June 15 deadline, if countenanced, would result in an unfair and unwarranted shifting of discovery costs to Defendants due to the Trustee's failure to meet its timely disclosure obligations under the rules. As such, rather than placing the burden on Defendants to depose the 195 listed bondholders or the various unidentified employees described by the Trustee in its June 15 disclosure, the

---

St. Paul Food Employees Health Care Fund, Vance & Bobbie G. Vaupel, Rosella Weissman, Ed C. Winthrop, Esther Bedford, Suzanne G. Johnson, and Lavina J. Lovitt.
[8] Specifically, the Trustee will be allowed to call or offer the depositions of only Mary Piontek, Stina Wishman, Joseph Riley, John Gresham, Drew Kanyer, Charles Howell, Brett Kimes, Terry Forsberg, and Raye Kanzenbach. (*See* Doc. 542 at 4.)

Court will allow the Trustee until the end of the day on November 10, 2012, to disclose on a bondholder by bondholder basis the facts on which it intends to rely to establish each individual bondholder's claim, as such claims can be established by evidence that is not precluded by this order.  The Court will, after the filing of this disclosure, schedule a status conference with the parties to determine the extent, if any, to which the discovery deadline may be extended to permit additional discovery on these claims.

Defendants contend that the claims of the remaining 114 bondholders identified by the Trustee should be denied because the questionnaire responses do not contain the specific broker recommendations and OS provisions upon which the bondholders allegedly relied. However, whether the Trustee is able to establish a genuine issue of material fact regarding each bondholder's reliance or causation is an issue that must be decided at summary judgment, not in a Rule 37 or Rule 41 motion. Moreover, with regard to the Trustee's A.R.S. § 44-1991 claim, "reliance upon a misrepresentation is not an element" of this statute. *Rose v. Dobras*, 128 Ariz. 209, 214, 624 P.2d 887, 892 (Ct. App. 1981). Rather, a plaintiff need instead prove "transaction causation," namely that "the violations in question caused the appellant to engage in the transaction in question." *Grand v. Nacchio*, 214 Ariz. 9, 19, 147 P.3d 763, 773 (Ct. App. 2006) (citations omitted). Accordingly, even if the Trustee has failed to produce sufficient evidence of reliance during the discovery period, its § 44-1991 claims may survive if the Trustee can show evidence creating a genuine issue as to whether Defendants' alleged misrepresentations caused particular bondholders to purchase the bonds. As stated above, the Trustee will have four weeks from the date of this order to set out the facts on which it will rely in making such claims that have not been precluded by this order.

## CONCLUSION

The Court will not dismiss the claims of the individual bondholders identified by the Trustee as of the June 15 deadline. The Trustee is, however, precluded from bringing claims on behalf of any bondholders which were not identified by that date. Furthermore, the Trustee is prohibited from offering testimony by the fifty-three listed bondholders

whose responses did not comply with Rule 26, and may not offer testimony relating to damages or causation from the twenty-seven bondholders who failed to provide meaningful responses as it relates to the reasons for their purchase of the bonds. The Trustee is also precluded from calling or using the depositions of any witnesses who were not specifically named in its June 15 disclosure. Finally, the Trustee is barred from offering any documents not specifically identified and described in its June 15 disclosure. The Trustee will have four weeks to set out the facts which make a prima facie case for each individual bondholder's claims, keeping in mind the above limitations prescribed by this Court.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Dismiss Claims of Non-Party Bondholders (Doc. 530) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that Plaintiff Wells Fargo will disclose the specific facts on which it bases its claims for each individual bondholder on or before **November 8, 2012**.

Dated this 11th day of October, 2012.

_A. Murray Snow_

/G. Murray Snow
United States District Judge