**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re: Allstate Life Insurance Company Litigation | No. CV-09-08162-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant James W. Treliving's Motion for Summary Judgment. (Doc. 574.) For the reasons discussed below, Stinson's Motion is granted in part and denied in part.

**BACKGROUND**

At issue in this lawsuit is the offering and sale of $35 million in revenue bonds (the "Bonds") used to finance the construction of a 5,000-seat Event Center in the Town of Prescott Valley, Arizona. The facts of the case are set out in greater detail in this Court's earlier Order of November 4, 2010. (Doc. 212.) Plaintiffs in this case are entities and individuals who purchased in the Bond offering in November 2005 (the "Bondholders"). They include Allstate Life Insurance Company and a number of individual plaintiffs whose interests are represented by the Indenture Trustee of the Bonds, Wells Fargo.

The Defendants in this case are numerous. They include the underwriters for the bonds, attorneys for the underwriters, and the various entities that received the proceeds for the bonds and built the Event Center. The relevant Defendants for the purposes of this order are Prescott Valley Event Center LLC ("PVEC-LLC"), Global Entertainment Corporation ("Global"), and Treliving. PVEC-LLC is the entity that received the proceeds of the bond sale and was responsible for managing the construction and financing of the Event Center. Global was the majority shareholder of PVEC-LLC, owning between 50% of PVEC-LLC's stock during the times relevant to this suit. In turn, the majority shareholder of Global was a holding company named Western Professional Hockey League ("WPHL"). Treliving is the chairman and a minority shareholder of both Global and WPHL.

This suit is based on a number of misstatements purportedly made by the Defendants. These misstatements were allegedly made in the Preliminary Official Statement and the Official Statement, collectively entitled as the Official Statements ("OS"). The OS provided two sources for paying debt service on the Bonds: (1) the net operating income from the Event Center and (2) Transaction Privilege Tax Revenues ("TPT Revenues"), allegedly pledged by the Town of Prescott Valley, consisting of sales taxes generated by the Event Center and certain areas near the Event Center. The alleged misstatements pertained to (1) the annual attendance and profitability of the Event Center and (2) the existence of a lien or other security device on the TPT Revenues for the benefit of the Bondholders.

The alleged misstatements regarding the Event Center's attendance and profitability are based on figures in the OS that projected an annual attendance of approximately 480,000. Based on this number, the OS projected that the Event Center would generate approximately $5 million in total revenues in the first year. Plaintiffs allege that Defendants put these figures in the OS despite their knowledge of material information that would undermine the Event Center's ability to generate the projected attendance and revenue. Two reports—the "2001 ICC Report" and the "2005 ERA

Report"—were conducted on the feasibility of the Event Center. These reports concluded that the center would generate substantially less revenue than what was stated in the OS. Plaintiffs allege that the defendants failed to disclose the existence of these feasibility reports, and that the OS stated that no feasibility reports had been prepared on its projections at all. Since its opening, the Event Center has in fact failed to recognize profit at the level of the projections set forth in the OS.

Plaintiffs allege that Defendants Global and PVEC-LLC contributed to the allegedly misleading statements in the OS. They assert claims against Treliving as a control person of Global and thus PVEC-LLC under Section 20(a) of the Exchange Act, A.R.S. § 44-1999(B) of the Arizona Securities Act, and 815 ILCS § 5/13 of the Illinois Securities Law. Plaintiffs also assert a claim against Treliving for negligent misrepresentation. Treliving moved for summary judgment on all claims against him, and the matter is now fully briefed before the Court. (Docs. 574, 617, 630.)

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see Jesinger*, 24

F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also* LRCiv. 1.10(l)(1) ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

## II.   Control Person Liability under Section 20(a) of the Exchange Act

Section 20(a) of the Exchange Act provides that "[e]very person who, directly or indirectly, controls any person liable under [this Act] shall also be liable jointly and severally with and to the same extent as such controlled person . . . ." 15 U.S.C. § 78t(a). To make a prima facie case under this section, a plaintiff must prove "(1) a primary

- 4 -

violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *No. 84 Empl.-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)) (internal quotations omitted). This "two-pronged test . . . should be construed liberally and flexibly." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 814 F.2d 1564, 1575 (9th Cir. 1990) (en banc).

"Control" is defined in the Code of Federal Regulations as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. The determination of a defendant's control over the primary violator "is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994) (citing *Arthur Children's Trust v. Keim,* 994 F.2d 1390, 1396–97 (9th Cir. 1993)) (internal quotations omitted).

"Traditional indicia of control" include "having a prior lending relationship, owning stock in the target company, or having a seat on the board." *Am. W. Holding Corp.*, 320 F.3d at 645 (citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996)). "A director is not automatically liable as a controlling person, although director status is a 'red light' to the court." *Kaplan*, 49 F.3d at 1382 (internal quotations omitted). The plaintiff need not prove that the defendant had scienter or that he "culpably participated" in the primary violation to establish control. *Paracor*, 96 F.3d at 1161. However, once the plaintiff makes a prima facie case of control, the "defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation." *Howard*, 228 F.3d at 1057. The defendant bears the burden of proving the good faith defense. *Hollinger*, 914 F.2d at 1575.

Treliving does not argue that no primary violation under the securities laws

occurred. Rather, he focuses on the second prong of Section 20(a) liability, contending that he is entitled to summary judgment because "Plaintiffs are unable to show that Treliving exercised control over either [Global or PVEC-LLC]." (Doc. 574 at 9.) (*Id.*) He cites to a host of facts to show that he was not personally involved in the Bond Offering, the drafting of the OS, or otherwise related in any way to the construction and financing of the Event Center. (*Id.* at 6–8.) Treliving argues that the only connection he has to the alleged securities violation is his status as a chairman and minority shareholder of WPHL and Global, and that this status is insufficient to establish control person liability. (*Id.* at 10 (citing *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994.))) He stresses that he was neither an officer nor employee of Global and that he was not involved in the day-to-day operations of the company. (*Id.* at 5–6.)

Treliving is correct that a defendant's mere status as director or shareholder is insufficient to establish control person liability. *Wool*, 818 F.2d at 1441. However, as stated above, director status is a "red light" suggesting the defendant's control over the company. *Kaplan*, 49 F.3d at 1382. Treliving does not dispute that he was the chairman of Global. (Doc. 574 at 5.) Nor does Treliving deny that he owned shares in Global, though he stresses that the most he ever held was nine percent. (*Id.* at 11.) Both of these are factors that traditionally indicate control. *Am. W. Holding Corp.*, 320 F.3d at 645.

Treliving asserts that he is entitled to summary judgment because the record lacks a crucial element: evidence that Treliving's "ability to control" had "some nexus" to the alleged misstatements in question. (Doc. 574 at 9.) He cites *Howard v. Everex Systems*, in which the Ninth Circuit upheld a grant of summary judgment for a defendant who served as director for less than three months and did not "supervise[] or [have] any responsibility for the preparation of the [misstatements]." 228 F.3d at 1067. He then points to his deposition, in which he testifies that he did not participate in any way in the transactions leading up to the construction of the Event Center and the sale of the Bonds. (Doc. 575-1 at 68:3–73:25.) The fact that Treliving did not participate or was unaware of the alleged misstatements in this case, however, does not show that he did not have any

responsibility for the preparation of those misstatements. Indeed, Global's bylaws show that Treliving's position as chairman obligated him to "supervise and control all of the business and affairs of the corporation and the performance by all of its other officers . . . ." (Doc. 618-3, Ex. 3.2 at 5.06.)

Treliving has failed to meet his summary judgment burden of showing that there is no material issue of fact that he did not control Global or PVEC-LLC. The question of control is intensely fact-driven, *Kaplan*, 49 F.3d at 1382, and as such is difficult to resolve on summary judgment. The undisputed facts show that Treliving was both a shareholder and chairman of Global and PVEC-LLC, and that the position of chairman came with significant supervisory responsibilities. Based on this evidence, a reasonable fact-finder could determine that Treliving was a control person under Section 20(a) of the Exchange Act.

In order for Treliving to obtain a grant of summary judgment, then, he must establish that he acted in good faith by demonstrating "no scienter and an effective lack of participation." *Howard*, 228 F.3d at 1057. Treliving makes no express argument that he acted in good faith. The evidence that he musters in support of his Motion, however, is stronger support for a good faith defense than for his argument that he was not a control person. Because Treliving appears to be arguing that he acted in good faith, the Court will analyze whether he has such a defense to Plaintiffs' prima facie showing of his status as a control person.

Treliving sets forth evidence that he did not participate in discussions regarding the Event Center (Doc. 575-1 at 38:14–17), did not review or comment on any contracts relating to the Event Center (*id.* at 69:6–9), never reviewed any feasibility reports (*id.* at 69:10–71:1) or reports for the financial performance of any event center (*id.* at 71:11–17), did not review or comment on any documents associated with the Bond offering or other financing of the Event Center (*id.* at 72:2–12), never discussed or approved the OS relating to the Bonds (*id.* at 73:6–21), and was unaware any "problem brewing in Prescott Valley" prior to hearing about the lawsuit (*id.* at 75:25–76:4). This evidence is sufficient

to meet Treliving's summary judgment burden of showing a lack of scienter and effective participation for the purposes of the good faith defense. *See Kaplan*, 49 F.3d at 1383 (upholding grant of summary judgment where defendant declared that he never directed or induced anyone to make any statements which he knew to be false or misleading). The burden thus falls on Plaintiffs to raise a material issue of fact that Treliving did not act in good faith.

Plaintiffs argue that the good faith defense can be established only if the defendant also shows that he "maintained and enforced a reasonable and proper system of supervision and internal control." (*Id.* at 9) (citing *Hollinger*, 914 F.2d at 1576). Plaintiffs admit that the elucidation of this rule occurred in the context of determining whether to hold broker-dealers liable as control persons. (*Id.*) However, they assert that the Ninth Circuit has held that this rule can be extended to other contexts. (*Id.*)

In *Kersh v. General Council of Assemblies of God*, the Ninth Circuit contemplated extending liability for failure to supervise to cases not involving broker-dealers. 804 F.2d 546, 550 (9th Cir. 1986). It set out a multi-factor test for determining whether failure-to-supervise liability should be imposed beyond the broker-dealer context. The factors included:

> a) whether the controlling person derives direct financial gain from the activity of the controlled person, b) the extent to which the controlled person is tempted to act unlawfully because of the controlling person's policies (e.g., compensation system), c) the extent to which statutory or regulatory law or the defendant's own policies require supervision, d) the relationship between the *plaintiff* and the controlling person, and e) the demonstration of some public policy need to impose such a requirement.

*Id.* In *Kersh*, the issue was whether a controlling person's failure to supervise could constitute "culpable participation," an element of the control liability that has since been eliminated from the Section 20(a) analysis. *Hollinger*, 914 F.2d at 1575. However, in eliminating the culpable participation requirement from the prima facie case, the Ninth Circuit merely shifted the burden, requiring the defendant to prove lack of culpable

participation as a part of establishing the good faith defense. *Id.* at 1576. The multi-factor test set out in *Kersh* is therefore still relevant in determining whether a defendant must prove adequate supervision as an element of his good faith defense.

Here, the parties agree that Treliving was the chairman and shareholder of Global, indicating that Treliving stood to benefit from Global's activities. In addition, Treliving had a duty to supervise the affairs of Global as set out in Global's bylaws. (Doc. 618-3, Ex. 3.2 at 5.06.) Treliving's relationship with Global as its chairman was one in which he should have exercised responsibility and oversight. The Court thus finds that public policy favors requiring individuals like Treliving, whose ownership and position of power within his company should not be accompanied with obliviousness to the company's important business dealings, to demonstrate adequate supervision as part of the defense of good faith.

A reasonable juror could find, based on the evidence of Treliving's high-ranking position and his apparent unawareness of Global's involvement in the Prescott Valley Event Center deal, that his lack of supervision amounted to a failure to act in good faith. Thus, Plaintiffs have raised a material issue of fact that Treliving did not act in good faith in connection with the construction of the Event Center and the Bond offering. Because Treliving failed to establish an absence of genuine issue as to his status as a control person, and Plaintiffs have raised a material fact issue that Treliving did not act in good faith, the Motion for Summary Judgment is denied on the Section 20(a) claim.

**III.    Arizona Securities Law Claim**

A.R.S. § 44-1999(B) is almost identical to Section 20(a) of the Exchange Act, providing for "vicarious or secondary liability to 'controlling persons' as it does to a person or entity that commits a primary violation of [A.R.S.] §§ 44-1991 or 1992." *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 922–23 (D. Ariz. 2011). Like its federal counterpart, § 44-1999(B) provides a defense if the defendant can show that he acted in good faith.

The Arizona legislature passed § 44-1999(B) with the intent that the courts "use as

a guide the interpretations given by the securities and exchange commission and the federal or other courts." *E. Vanguard Forex, Ltd. v. Arizona Corp. Comm'n*, 206 Ariz. 399, 410, 79 P.3d 86, 97 (Ct. App. 2003) (quoting 1996 Ariz. Sess. Laws, ch. 198, §11(C)). The legislature also intended "that the Arizona Securities Act be liberally construed to effect its remedial purpose of protecting the public interest." *Id.* Thus, if anything, the sweep of the Arizona Securities Act is broader than that of the federal securities regime.  *See Siporin v. Carrington*, 200 Ariz. 97, 103, 23 P.3d 92, 98 (Ct. App. 2001) (stating that the Arizona courts would "depart from those federal decisions that do not advance the Arizona policy of protecting the public from unscrupulous investment promoters").

Treliving's argument for granting summary judgment on the § 44-1999(B) differs little from his argument for Section 20(a). (Doc. 574 at 11.) He argues that *Vanguard*, "[t]he only Arizona case that imposed control liability on a corporate director pursuant to § 44-1999(B), did so under the limited circumstance where the individual defendants were the sole shareholders, sole officers, and sole directors of the primarily liable defendant corporations." (*Id.* at 12.) Treliving's characterization of the facts of *Vanguard* is correct, but the Arizona Court of Appeals did not limit its holding to those facts. Instead, the Court of Appeals stated that § 44-1999(B) imposed "presumptive control liability on those persons who have the *power* to directly or indirectly control the activities of those persons or entities liable as primary violators of §§ 44-1991 and -1992." *Vanguard*, 79 P.3d at 99 (emphasis in original). This definition is substantially similar to the definition of control under the federal securities regime. *See* 17 C.F.R. § 230.405. To accept Treliving's interpretation of *Vanguard* as limiting control person liability under § 44-1999(B) would be to adopt a standard for control person liability that is narrower than the one set out under Section 20(a). This concept is unsupported by Arizona case law and contradicted by the express legislative intent that § 44-1999(B) have broad coverage.

The evidence presented by the parties in their arguments for § 44-1999(B) liability

is duplicative of the evidence they submitted in their arguments for Section 20(a) of the Exchange Act. Moreover, the parties have not demonstrated, and the Court's own review of the case law has not revealed, any significant difference between Arizona and federal law on control person liability that would be relevant in deciding this motion. Thus, Treliving's Motion for Summary Judgment on the § 44-1999(B) claim for the same reasons it is denied on the Section 20(a) claim.

**IV.   Illinois Securities Law Claim**

Section 13(A) of the Illinois Securities Law provides that controlling persons are jointly and severally liable for any sale of a security made in violation of its provisions. 815 ILCS § 5/13. A "controlling person" is defined under Illinois law as an individual who owns either (1) 25% or more of the outstanding voting securities of the issuer of such security or (2) enough outstanding securities to allow that individual to elect a majority of the board of directors or other managing body of the issuer. *Id.* § 5/2.4. An issuer, in turn, is defined as "every person who shall have issued or proposes to issue any security." *Id.* § 5/2.2. For unincorporated issuers, however, the definition of a "controlling person" is different: it is defined as "any person offering or selling a security, or group of persons acting in concert in the offer or sale of a security, who directly or indirectly controls the activities of the issuer." *Id.* § 5/2.4.

Treliving points to evidence that the Bonds were issued by the Industrial Development Authority of the County of Yavapai (the "Authority"), not WHPL or Global or any of the entities that Plaintiffs claim Treliving controls. (Doc. 559-3 at SMH002712.) Because Treliving does not own any outstanding securities in the Authority, he asserts that he cannot be held liable as a controlling person under Illinois law. Treliving has demonstrated that there is no genuine issue of material fact as to his lack of control over the Authority.

The burden thus falls on Plaintiffs to raise a genuine issue of material fact. Plaintiffs assert, without citation or explanation, that "the Illinois statute is broad enough in scope to treat PVEC[-LLC] as a de facto issuer and hold both Global and Treliving

1  liable as controlling persons of PVEC." (Doc. 617 at 14.) Plaintiffs assert that this

2  holding is necessary for "the Illinois Act to function as its drafters intended." Plaintiffs

3  cite to no authority for how, exactly, the drafters of the Illinois Securities law intended

4  for the statute to function. A plain reading of 815 ILCS § 5/2.2 does not reveal any

5  support for holding the borrowers of bond proceeds as "de facto issuers." The statute

6  straightforwardly defines "issuer" as "every person who shall have issued or proposes to

7  issue any security," with four clearly delineated exceptions. *Id.* None of the exceptions

8  refer to municipal bonds. If the Illinois legislature intended for the borrowers of proceeds

9  from the sale of municipal bonds to be subject to liability as "issuers," they could have

10  drafted an additional exception. They did not. Plaintiffs' argument that PVEC-LLC

11  should be treated as a "de facto issuer" is rejected. Plaintiffs have failed to raise any issue

12  of material fact that Treliving was a controlling person under Illinois law. As such,

13  Treliving's Motion for Summary Judgment on this claim is granted.

14  **V.     Negligent Misrepresentation**

15         Under Arizona law, negligent misrepresentation occurs when a person "fails to

16  exercise reasonable care and competence in obtaining or communicating information and

17  thereby, in the course of his business or employment, provides false information for the

18  guidance of others." *PLM Tax Certificate Program 1191–92, L.P. v. Schweikert,* 216

19  Ariz. 47, 50, 162 P.3d 1267, 1270 (Ct. App. 2007). The recipients of the information

20  must incur damages due to their justifiable reliance on the false information. *Id.* In

21  addition, the defendant must have owed a duty to the injured party. *Id.* A defendant can

22  be held liable for negligent misrepresentation if it discloses some facts but negligently

23  omits others, and the omission creates a misleading or false impression. *Hill v. Jones*, 151

24  Ariz. 81, 84–85, 725 P.2d 1115, 1118–19 (Ct. App. 1986). As stated in this Court's Order

25  of November 4, 2010, Plaintiffs' negligent misrepresentation claim is limited to

26  statements in the OS that create "the misleading impression that Bondholders would have

27  a 'first lien' upon certain TPT Revenues that were pledged for debt servicing." (Docs.

28  212 at 69.)

Treliving sets forth evidence that he "neither participated in drafting nor did he have knowledge of the Official Statements." (Doc. 574 at 15.) As discussed above in Section II, Treliving testified at his deposition that he did not review or comment on any documents associated with the Bond offering or other financing of the Event Center and that he never discussed or approved the OS relating to the Bonds. (Doc. 575-1 at 72:2–12, 73:6–21.) There is no evidence in the record that he either provided false information or negligently omitted information, thereby creating a false impression. Treliving has met his summary judgment burden.

Plaintiffs do not address the negligent misrepresentation claim at all in their Response. As such, they have failed to overcome Treliving's showing of lack of any genuine issue of material fact. Treliving's Motion for Summary Judgment on the negligent misrepresentation claim is granted.

### CONCLUSION

Plaintiffs have shown that a genuine issue of material fact exists as to whether Treliving was a control person of Global under both Section 20(a) of the Exchange Act and § 44-1991 of the Arizona Securities Act. However, Plaintiffs have failed to establish any fact issue as to Treliving's liability under the Illinois Securities Law or Arizona's common-law negligent misrepresentation claim. As such, Treliving's Motion for Summary Judgment is denied as to the Section 20(a) and § 44-1991 claims, but granted as to the Illinois Securities Law and negligent misrepresentation claims.

**IT IS THEREFORE ORDERED** that Defendant James W. Treliving's Motion for Summary Judgment (Doc. 574) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 1st day of March, 2013.

G. Murray Snow
United States District Judge