**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re: Allstate Life Insurance Company Litigation

No. CV-09-08162-PCT-GMS

**ORDER**

Pending before the Court is Stinson Morrison Hecker's ("Stinson") Motion for Summary Judgment. (Doc. 581.) For the reasons discussed below, Stinson's Motion is granted in part and denied in part.

**BACKGROUND**

At issue in this lawsuit is the offering and sale of $35 million in revenue bonds (the "Bonds") used to finance the construction of a 5,000-seat Event Center in the Town of Prescott Valley, Arizona. The facts of the case are set out in greater detail in this Court's earlier Order of November 4, 2010. (Doc. 212.) Plaintiffs in this case are entities and individuals who purchased in the Bond offering in November 2005 (the "Bondholders"). They include Allstate Life Insurance Company and a number of individual plaintiffs whose interests are represented by the Indenture Trustee of the Bonds, Wells Fargo.

The Defendants in this case are numerous. They include the underwriters for the bonds, attorneys for the underwriters, and the various entities that received the proceeds for the bonds and built the Event Center. For the purposes of this motion, the relevant defendant is law firm Stinson, who served as underwriters' counsel for the offering. Stinson initially represented only the underwriter Stern, but later represented all the underwriters participating in the offering.

This action is based on a number of misstatements purportedly made by all Defendants. These misstatements were allegedly made in the Preliminary Official Statement and the Official Statement, collectively entitled as the Official Statements ("OS"). The OS provided two sources for paying debt service on the Bonds: (1) the net operating income from the Event Center and (2) Transaction Privilege Tax Revenues ("TPT Revenues"), allegedly pledged by the Town of Prescott Valley, consisting of sales taxes generated by the Event Center and certain areas near the Event Center. The alleged misstatements pertained to (1) the annual attendance and profitability of the Event Center and (2) the existence of a lien or other security device on the TPT Revenues for the benefit of the Bondholders.

The alleged misstatements regarding the Event Center's attendance and profitability are based on figures in the OS that projected an annual attendance of approximately 480,000. Based on this number, the OS projected that the Event Center would generate approximately $5 million in total revenues in the first year. Plaintiffs allege that Defendants put these figures in the OS despite their knowledge of material information that would undermine the Event Center's ability to generate the projected attendance and revenue. Two reports—the "2001 ICC Report" and the "2005 ERA Report"—were conducted on the feasibility of the Event Center. These reports concluded that the Center would generate substantially less revenue than what was stated in the OS. Plaintiffs allege that the defendants failed to disclose the existence of these feasibility reports, and that the OS stated that no feasibility reports had been prepared on its projections at all. Since its opening, the Event Center has in fact failed to recognize profit

1    at the level of the projections set forth in the OS.

2         Plaintiffs also assert claims based on alleged drafting errors in the bond
3    documents. Plaintiffs claim that the OS falsely stated that the debt service on the Bonds
4    would be "secured" by a first lien on the TPT Revenues. They allege that due to defective
5    drafting in certain Bond documents, no such lien exists. Plaintiffs allege that, because of
6    these drafting errors, the Town of Prescott Valley has refused to deliver TPT Revenues
7    for debt servicing on the Bonds, thus harming the Bondholders.

8                                      **DISCUSSION**

9    **I.    Legal Standard**

10        Summary judgment is appropriate if the evidence, viewed in the light most
11   favorable to the nonmoving party, shows "that there is no genuine issue as to any material
12   fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
13   Only disputes over facts that might affect the outcome of the suit will preclude the entry
14   of summary judgment, and the disputed evidence must be "such that a reasonable jury
15   could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477
16   U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial
17   responsibility of informing the district court of the basis for its motion, and identifying
18   those portions of [the record] which it believes demonstrate the absence of a genuine
19   issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

20        Substantive law determines which facts are material. *Anderson*, 477 U.S. at 248;
21   *see Jesinger*, 24 F.3d at 1130. Because "[c]redibility determinations, the weighing of the
22   evidence, and the drawing of legitimate inferences from the facts are jury functions, not
23   those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable
24   inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing
25   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d
26   1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be
27   left to the jury.") (citations omitted).

28        Furthermore, the party opposing summary judgment "may not rest upon the mere

allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also* LRCiv. 1.10(l)(1) ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

## II.    State Law Securities Claims

Stinson contends that it is entitled to summary judgment on the Plaintiffs' claims that Stinson is liable under A.R.S. §§ 44-1991(A)(2) and (A)(3). A.R.S. § 44-1991(A)(2) makes it unlawful for any person to "[m]ake any untrue statement of material fact, or omit to state any material fact" in connection with the sale of securities. A.R.S. § 44-1991(A)(3) similarly makes it unlawful for any person to "[e]ngage in any transaction, practice or course of business which operates . . . as a fraud or deceit." A.R.S. § 44-2003(A) creates a cause of action against any person who "made, participated in or induced the unlawful sale or purchase" of securities in violation of A.R.S. § 44-1991. This liability extends only to persons who have "more than some collateral involvement in a securities transaction" and to misstatements that have more than "merely . . . the effect of influencing a buyer to make a sale." *Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 22, 945 P.2d 317, 333 (Ct. App. 1996). Stinson does not dispute that an unlawful sale of securities occurred in violation of A.R.S. § 44-1991. Further, the parties do not argue that Stinson either "made" or "induced" the unlawful sale or

purchase at issue; rather, they focus on whether Stinson "participated" in the transaction.

To "participate in" means "to take part in something" or "have a part or share in something." *Grand v. Nacchio,* 222 Ariz. 498, 500–01, 217 P.3d 1203, 1205–06 (Ct. App. 2009) (*Grand I*). It requires "something more than activities that are merely 'tangentially related and concurrent with [an] ongoing sale.'" *Facciola v. Greenberg Traurig LLP*, CV-10-1025-PHX-FJM, 2011 WL 2268950 at *2 (D. Ariz. June 9, 2011) (quoting *Standard Chartered,* 190 Ariz. at 21). In addition, the statute exempts from liability any person who only "acted in the ordinary course of that person's professional capacity in connection with that sale or purchase." A.R.S. § 44-2003(A). Thus, an auditing firm that merely performed an audit in the ordinary course of its business was not liable under § 44-2003, even though its audit opinions contributed to the plaintiff's decision to participate in the sale. *Standard Chartered*, 190 Ariz. at 22–23.

As stated in the Court's November 4th Order, a defendant cannot be held liable under A.R.S. § 44-1991 unless it "made the misrepresentations at issue, or at least had a duty to disclose the facts necessary to make the statement made, in light of the circumstances, not misleading." (Doc. 212 at 57) (citing *Dunahay v. Struzik*, 96 Ariz. 246, 249, 393 P.2d 930, 933 (1964); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 174 (1995)). Plaintiffs characterize this as the "substantial participation" test, which they assert was applied by this Court only to the dismissed federal claims, and which they argue is inapplicable anyway because it was rejected by the Supreme Court in *Janus*. (Doc. 581 at 7.) In fact, this standard was applied by the Court to both the federal and state law claims alleging securities fraud. (Doc. 212 at 31 n.13, 58.) Conversely, the Supreme Court's rejection of the substantial participation test in *Janus* specifically limited its application to the federal private right of action implied under § 10(b). *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302–03 (2011). The decision did not hold that the substantial participation test is inapplicable to state securities law claims like ones arising under A.R.S. § 44-1991. (*See* Doc. 507 at 8 n.3 (noting the difference between the federal Securities Exchange Act and

the Arizona State Securities Act)). Indeed, Arizona has defined its state securities action more broadly than the federal action—while federal law requires a defendant to have ultimate authority over a statement, "Arizona 'imposes only an affirmative duty not to mislead.'" *Red River Res., Inc. v. Mariner Sys., Inc.*, No. CV 11-02589-PHX-FJM, 2012 WL 2507517 at *10 (D. Ariz. June 29, 2012) (citing *Aaron v. Fromkin*, 196 Ariz. 224, 227, 994 P.2d 1039, 1042 (Ct. App. 2000)).[1]

Plaintiffs further argue that the substantial participation test does not comport with the legislative intent that A.R.S. § 44-1991 be "liberally construed." (Doc. 581 at 6) (quoting *Grand v. Nacchio*, 225 Ariz. 171, 174 236 P.3d 398, 401 (2010) (*Grand II*)). Plaintiffs' preferred interpretation of A.R.S. § 44-2003 is that it covers anyone who "participated in" the unlawful transaction when not acting "in the ordinary course of that person's professional capacity." (*Id.* at 11.) This interpretation does not, however, conflict with the Court's standard from its November 4 Order. Plaintiff's definition still requires "participation," and the Court's explanation of "participation" as "play[ing] a substantial role in drafting, preparing, and reviewing the allegedly misleading statements" comports with the Arizona courts' pronouncements on the definition of "participation." (Doc. 212 at 31.) *See Grand II*, 225 Ariz. at 175; *Standard Chartered*, 190 Ariz. at 22. The Court will therefore adhere to the standard articulated in its earlier Order. Thus, Stinson cannot be liable without a showing that it made the misrepresentations alleged by Plaintiffs, or so substantially participated in drafting portions of the misleading OS as to suggest that they became aware of facts that gave rise to a duty to disclose. (*Id.* at 58.)

Stinson contends that its activities in connection with the sale of the Bonds cannot give rise to liability under § 44-1991 because it neither made the misrepresentations at issue nor had a duty to disclose facts to make statements not misleading. (Doc. 558 at 12.) It points to evidence that none of the Stinson attorneys working on the matter "wrote or substantively revised or contributed to the language" in the OS, which is where all the

---

[1] Moreover, federal law has no counterpart to Arizona's express cause of action or its "participate or induce" standard as set forth in A.R.S. § 44-2003.

alleged misleading statements were published. (Doc. 559-A at ¶ 8.) Instead, the documents that Stinson drafted (the Bond Purchase Agreement, the Continuing Disclosure Agreement ("CDA"), Agreement Among Underwriters ("AAU"), and the 10b-5 opinion) were all for the benefit of the underwriters, and did not contain misstatements on which the bond purchasers could have relied. (*Id.* at ¶¶ 2, 3, 12, 13, 15, 16.) Stinson further points to evidence that its role in the entire Bond Offering was limited, and presents its engagement letter which expressly states that Stinson would "not prepare bond documents or act as disclosure counsel." (Doc. 559-A, Ex. 1 at SMH003804.)

The burden thus falls on Plaintiffs to raise a material issue of fact that Stinson made the misleading statements or was so involved in drafting the OS that it had actual knowledge of misleading facts, giving rise to a duty to disclose.[2]

Plaintiffs state broadly that "Stinson did actually draft or prepare the misleading statements regarding the CDA and had actual knowledge with respect to other disclosure defects." (Doc. 581 at 8.) Plaintiffs cite no part of the record in making this statement, and the Court's own review of the evidence shows that Plaintiffs overstate the facts.

The parties agree that Stinson drafted the CDA. (Doc. 558 at 3 n.3.) SEC Rule 15c2-12 requires underwriters to provide certain annual financial information on "obligated persons" to the Municipal Securities Rulemaking Board. 17 C.F.R. 140.15c2-12(5)(i). The CDA is an agreement among the parties involved that the underwriters will have available and provide this information to the Board after issuance. Plaintiffs contend that the version of the CDA attached to the OS contained material misrepresentations, and that because Stinson drafted it, Stinson participated in the making the material misstatements.

Plaintiffs' Statement of Facts shows that two versions of the CDA were written: an

---

[2] The Court notes that Plaintiffs' Response to Stinson's Motion for Summary Judgment is rife with factual allegations that fail to cite to any part of the record. Nevertheless, the Court will consider Plaintiffs' arguments to the extent they are supported by evidence set forth in Plaintiffs' Counter Statement of Facts.

initial one, providing for the Town and the Borrower to be joint obligors in providing financial information, and a second one, which was in fact two CDAs providing for the Town and the Borrower to be obligors separately. (Docs. 583-43 at SMH007720, 583-44 at HOCKING002957.) Plaintiffs contend that Stinson made a material misstatement in the OS when the first CDA (the "Joint CDA"), rather than the second two CDAs, was attached to the OS as an appendix, and no sticker was placed on the OS indicating that the attached Joint CDA was out of date. (Doc. 581 at 9.) Plaintiffs contend that Stinson "removed the Town from [the continuing disclosure] obligation without making any disclosure to bondholders." (*Id.* at 4.) The facts, however, indicate not that Stinson removed the Town from any obligation, but rather that Stinson drafted new agreements for the Borrower and the Town in two separate documents while maintaining the same obligations for both parties as set out in the first Joint CDA. Both of the new drafts state that both the Town and the Borrower are "'obligated persons' with responsibility for continuing disclosure within the meaning of the Rule," (Doc. 583-44 at HOCKING002969, 002979), just as the original draft did, (*id.* at HOCKING002958). The evidence does not indicate, as Plaintiffs claim, that Stinson removed all of the Town's obligations by drafting new CDAs. In fact, the Town's obligations under its respective new CDA appear to be identical to its obligations under the first joint CDA. (*Compare* Doc. 583-44 at HOCKING002958–2963 *with* Doc. 583-44 at HOCKING002979–2984.)

Nevertheless, A.R.S. § 1991(A)(2) provides that a person can be liable for making untrue statements of material fact or omitting statements necessary to make statements not misleading. The fact that Stinson drafted the Joint CDA, which was part of the OS, is evidence that Stinson in fact participated in making the statements contained in the OS. The evidence set forth by the Plaintiffs raises an issue of fact that Stinson omitted to state that two CDAs were drafted, setting out separate obligations for the Town and the Borrower. Whether the omission is material is a question of fact for the jury. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009) *aff'd*, 131 S. Ct. 1309,

179 L. Ed. 2d 398 (U.S. 2011). An issue of materiality can be resolved as a matter of law only when "omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *Id.* (internal quotations omitted) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). Here, there is no cross-motion for summary judgment, so whether the omission is *material* as a matter of law is not at issue. Rather, Stinson asks that the Court find the omission *immaterial* as a matter of law. However, a reasonable juror could find it material that Stinson failed to state that an outdated version of the CDA, which held the Town and the Borrower jointly responsible for disclosures, rather than setting out separate obligations for the Town and the Borrower, was attached to the OS.

In its Reply, Stinson points out that Plaintiffs never previously alleged that the OS was materially misleading because of any statements involving the CDA. (Doc. 607 at 5.) However, a party may unearth new facts and details during discovery and use them in support of its claim without amending the complaint each time. It is sufficient if the complaint alleges the causes of action that the plaintiff seeks to bring. *Au v. Republic State Mortgage Co.*, No. CIV. 11-00251 JMS, 2012 WL 6726384 at *3 (D. Haw. Dec. 27, 2012). Stinson further argues that Plaintiffs asserted no negligence claim against it, but Plaintiffs' argument regarding the CDA does not require a negligence claim—rather, Plaintiffs' CDA claim is pursuant to the Arizona Securities Act. (Doc. 581 at 9.) Thus, Stinson's Motion for Summary Judgment on this ground is denied.

Plaintiffs further argue that Stinson is liable for the misstatements in the OS regarding the allegedly misleading projections. (Doc. 581 at 2.) They state that Stinson "had actual knowledge with respect to other disclosure defects" aside from the outdated CDA, though they again do not cite to the record in doing so. (Doc. 581 at 8.)

After combing through Plaintiff's Counter Statement of Facts,[3] it appears that

---

[3] While the record actually contained some of the facts characterized by the Plaintiffs in their Response, the Response frequently made factual assertions without citing to its Counter Statement of Facts. In addition, the Counter Statement of Facts frequently made factual assertions without citing to the relevant portions of the record. At

Plaintiffs have set forth sufficient evidence to create a material issue of fact as to Stinson's participation in the drafting, preparing, and reviewing the OS, as well as its knowledge of the potential falsehoods in the document. Plaintiffs cite to evidence that Stinson counsel "read the development agreement and then tried to match that up to the indenture and loan agreement and deposit only account agreement." (Doc. 583-60 at 74:20–25.) Furthermore, Stinson's attorney admitted to noticing "differences" in the timing and the mechanics of the various documents. (*Id.* at 163:23–164:15.) In addition, Plaintiffs point to Stinson's Invoice Time Detail, which indicates that Stinson attorneys spent time reviewing versions of the Preliminary Official Statement ("POS") and discussing the drafts with other parties. (Doc. 583-6 at 4.) They also point to an email circulated by a Stinson attorney setting out "the final changes we would like to have to the POS before it is printed today." (Doc. 583-20.) The email indicates that Stinson attorneys participated in discussions regarding changes to the POS. The subsequent email from counsel at Kutak Rock indicates that Stinson and Stern were responsible for the final changes, including what information would be included or added, in the final POS. (Doc. 583-38.) Plaintiffs also set forth evidence that the lead Stinson partner working on the case had knowledge that a feasibility analysis had been conducted and did nothing about it, despite the statement in the POS that no feasibility analysis had been performed. (Doc. 583-60 at 62:21–63:9.)

A reasonable juror could find, based on the above evidence, that Stinson substantially participated in the drafting, preparing, and reviewing of the POS, which was part of the OS containing the misleading statements alleged by Plaintiffs to constitute an unlawful sale of securities under A.R.S. § 44-1991. Moreover, a finder of fact could determine, based on the evidence set forth by Plaintiffs, that Stinson spent enough time reviewing and editing the POS that it had actual knowledge of the misstatements

---

times, the Court found such assertions to be overstatements of the record, but the Court did locate some of the facts essential to Plaintiffs' argument. The Court will not, in the future, attempt to verify the accuracy of such statements but will simply discount them. *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

contained in the POS, thus giving rise to a duty to disclose, given their substantial role in the transaction. Stinson's Motion for Summary Judgment is therefore denied on Plaintiffs' § 44-1991 claim.

## III.   Aiding and Abetting

Under Arizona law, the elements of aiding and abetting fraud are: (1) a primary violation, (2) defendant's knowledge of or duty of inquiry regarding the primary violation, and (3) the defendant's substantial assistance or encouragement of the primary actor's violation. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons*, 201 Ariz. 474, 485, 38 P.3d 12, 23 (2002). Liability does not depend on whether or not the defendant owes a duty of care—rather, it is based on whether the defendant *knew* that the conduct it was aiding and abetting was a tort. *Id*. However, "[a] showing of actual and complete knowledge of the tort is not uniformly necessary," and proof of knowledge can be circumstantial. *Id.* at 23, 26. For example, "if a method or transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability." *Id.* at 27. To establish the element of substantial assistance, the plaintiff must demonstrate that the defendant's conduct was "a substantial factor in causing the plaintiff's harm." *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1434–35 (D. Ariz. 1992).

Stinson points to the same evidence as it presented for the state law securities claim to support its Motion for Summary Judgment on the aiding and abetting claim. Specifically, it presents evidence that it neither drafted nor opined on the allegedly misleading projections in the OS. (Doc. 558 at 14.) Thus, Stinson argues, it neither had knowledge of the common law fraud nor substantially assisted it. (*Id.*) Stinson does not argue that no primary violation occurred.

In Response, Plaintiffs concede that their aiding and abetting claim is limited to the misstatements relating to "the inflated projections and the failure to disclose the demographic facts in the 2005 ERA Report." (Doc. 581 at 14.) Nevertheless, much of the evidence to which they cite relates to other issues—statements regarding the parking

expenses and split CDAs. (*Id.* at 15–16.) Since this evidence is irrelevant to the inflated projections and the 2005 ERA Report, it does not overcome Stinson's initial showing that the record lacks evidence that it aided and abetted securities fraud.

Plaintiffs also point to evidence that Stinson was placed on notice that the bond offering was atypical. (Doc. 581 at 15–16.) It sets forth evidence that, while the primary Stinson attorney working on the offering was aware of the existence of the 2005 ERA Report, he reviewed and apparently did not object to several drafts of the POS which stated that no feasibility report had been prepared. (Docs. 283-60 at 62:21–63:3; 283-6 at 4.) It also submits evidence that the Stinson attorney knew that a major bond insurer, Radian, withdrew from the deal. (Docs. 583-24 at SMH001219; 583-60 at 145:2–6.) It further cites to evidence that Stinson counsel knew that the Town's investment advisor, Stone and Youngberg, withdrew from participating in and reviewing the documents associated with the transaction. (Doc. 583-60 at 178:14–23.)

Stinson argues that this evidence is insufficient to overcome summary judgment because the facts alleged do not reach the level of atypicality found in other cases involving circumstantial evidence of knowledge. (Doc. 607 at 8.) It argues that the two cases on which Plaintiffs rely have much stronger circumstantial evidence of knowledge than the evidence set forth in this case. (*Id.*) This may be true, but the strength or weakness of evidence is not relevant in determining summary judgment; rather, the issue is whether evidence exists that could create a material issue of fact. It is for the jury to evaluate the weight of the evidence. *Sluimer v. Verity, Inc.*, 606 F. 3d 584, 587 (9th Cir. 2010). The issue here is whether Plaintiffs have set forth sufficient evidence for a reasonable finder of fact to determine that Stinson had actual knowledge of the primary violation. Plaintiffs have presented evidence that Stinson was aware of false statements in the OS, inconsistencies in the indenture and loan agreements, and other parties' withdrawals from participation in the offering. This is enough for a reasonable juror to find that Stinson was aware of the Bond offering's atypical nature, which is sufficient circumstantial evidence of knowledge to survive summary judgment.

Stinson also asserts that it is entitled to summary judgment on the aiding and abetting claim because its evidence of its limited participation as set forth in its engagement letter with Stern shows that the element of substantial assistance is not met. (Doc. 559-A, Ex. 1 at SMH003804.) Substantial assistance simply means "more than a little aid," and can take many forms. *Wells Fargo*, 38 P.3d at 26 (internal citations omitted). Even "facts [that] are unremarkable taken in isolation" can constitute substantial aid if, taken together, "they suggest an unusual pattern of extraordinary attempts" to assist the primary violator. *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 626, 630 (8th Cir. 1985)). The assistance need not be a necessary ingredient of the primary violation, just an act or omission that makes it easier for the violation to occur. *Id.* at 27.

Plaintiffs provide the following evidence of Stinson's substantial assistance: reviewing and proposing changes to the POS (Docs. 583-6 at 4; 583-20; 583-38), modifying the CDA (Doc. 583-44 at HOCKING002957), and issuing a clean 10b-5 opinion that was a condition precedent to the underwriters' purchase of the bonds (Doc. 583-52). These were all steps along the process which culminated in the fraudulent sale of the bonds to Plaintiffs, the primary violation. Based on this evidence, a reasonable fact-finder could conclude that Stinson's actions, in the aggregate, constitute "more than a little aid." *Wells Fargo*, 38 P.3d at 26. Stinson's Motion for Summary Judgment on the aiding and abetting claim is therefore denied.

## IV.  Negligent Misrepresentation

Under Arizona law, negligent misrepresentation occurs when a person "fails to exercise reasonable care and competence in obtaining or communicating information and thereby, in the course of his business or employment, provides false information for the guidance of others." *PLM Tax Certificate Program 1191–92, L.P. v. Schweikert,* 216 Ariz. 47, 50, 162 P.3d 1267, 1270 (Ct. App. 2007). The recipients of the information must incur damages due to their justifiable reliance on the false information. *Id.* In addition, the defendant must have owed a duty to the injured party. *Id.* A defendant can be held liable for negligent misrepresentation if it discloses some facts but negligently

omits others, and the omission creates a misleading or false impression. *Hill v. Jones*, 151 Ariz. 81, 84–85, 725 P.2d 1115, 1118–19 (Ct. App. 1986).

As stated in the November 4th Order and conceded by Plaintiffs, the negligent misrepresentation claim against Kutak and Stinson is limited to claims regarding statements in the OS that create "the misleading impression that Bondholders would have a 'first lien' upon certain TPT Revenues that were pledged for debt servicing." (Docs. 212 at 69; 581 at 14 n.12.)

Stinson contends that it is entitled to summary judgment because it made no statement regarding the supposed first lien on TPT revenues for debt servicing. Stinson points to the fact that no one at the firm "wrote or substantively revised or contributed to the language" of the OS, including any language referring to a "first lien" on or "pledge" of TPT revenues. (Doc. 559-A at ¶ 8.) It also points to evidence that no one at Stinson drafted any documents pertaining to a pledge or security interest in the TPT revenues. (*Id.* at ¶ 13.) Stinson has met its summary judgment burden of showing the absence of a fact issue in the record on whether it made statements regarding the TPT revenues. The burden therefore falls on Plaintiffs to raise a genuine issue of material fact on this element of the claim.

In their Response, Plaintiffs present a host of facts (again without any citation to the record) suggesting that Stinson was aware of material information but did not disclose it. (Doc. 581 at 15.) While omission of material information can give rise to a claim under Arizona's tort of negligent misrepresentation, the omission must arise in conjunction with the disclosure of *some* facts to be actionable. *Hill*, 151 Ariz. at 84–85. Plaintiffs make no assertions that would suggest that Stinson made any statements or disclosed any facts relating to the TPT revenues or a lien or pledge thereof. They claim vaguely that Stinson's action of removing the Town from the Joint CDA dealt directly with the security of the Bonds, but cite to no part of the record. (Doc. 581 at 15.) The Court's own review of the CDA does not reveal that the separation of the Joint CDA into two different CDAs for the Borrower and the Town in any way affected the security for

the Bonds. Plaintiffs have failed to overcome Stinson's showing that there is no material issue of fact that Stinson did not supply any information to the Plaintiffs. As such, Stinson's Motion for Summary Judgment is granted on Plaintiffs' claim of negligent misrepresentation.

### CONCLUSION

Plaintiffs have demonstrated a genuine issue of material fact that (1) Stinson made a material omission in failing to disclose the attachment of an outdated CDA to the OS and (2) Stinson participated substantially in the drafting and reviewing of the OS. Stinson's Motion for Summary Judgment on Plaintiffs' state-law securities claims is therefore denied. In addition, Plaintiffs have raised a genuine issue of fact as to Stinson's knowledge of and substantial assistance to the other Defendants' primary violation of securities violations. Thus, Stinson's Motion for Summary Judgment on Plaintiffs' aiding and abetting claim is also denied. However, Plaintiffs have failed to raise a genuine issue of fact that Stinson actually made any statements regarding the lien on the TPT Revenues as debt service for the Bondholders. Stinson's Motion for Summary Judgment on the negligent misrepresentation claim is therefore granted.

**IT IS THEREFORE ORDERED** that Defendant Stinson Morrison Hecker's Motion for Summary Judgment (Doc. 558) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 10th day of June, 2013.

*H. Murray Snow*

/G. Murray Snow
United States District Judge